[No. 16856.    Department One.    May 13, 1922.]

PUGET MILL COMPANY, *Respondent*, v. NORTH SEATTLE IMPROVEMENT COMPANY, *Appellant*, JAMES P. BURNS *et al., Defendants.*[1]

BOUNDARIES (4, 13)—LOST CORNERS—LOCATION—SURVEYS—EVIDENCE—SUFFICIENCY. The true corner of a section is where it was located by the original survey, and error therein cannot be corrected; and where this is shown by the testimony of a surveyor who identified the location and witness trees, and from time to time observed and later marked and identified the spot, the location controls over an attempted relocation in accordance with the manual of the Interior Department for the establishment of lost corners.

ADVERSE POSSESSION (22, 32, 34)—HOSTILE POSSESSION—COLOR OF TITLE—PAYMENT OF TAXES—EVIDENCE. A claim of adverse possession to a strip of land at a disputed government corner cannot be

[1]Reported in 206 Pac. 954.

sustained where the land was open to the commons, so that there
was no open or exclusive possession; and payment of taxes and
claim of title would be only to the true line of the government legal
subdivision.

APPEAL (453) — REVIEW — HARMLESS ERROR — EVIDENCE. The ex-
clusion of extremely remote evidence which would not have affected
the result is harmless.

Appeal from a judgment of the superior court for
King county, Davidson, J., entered May 27, 1921, upon
findings in favor of the plaintiff, in an action to estab-
lish the location of a meander corner, tried to the court.
Affirmed.

*James A. Dougan,* for appellant.

*Chadwick, McMicken, Ramsey & Rupp* and *J. E.
Peterson,* for respondent.

FULLERTON, J.—The respondent, Puget Mill Com-
pany, and the appellant, North Seattle Improvement
Company, are the owners, respectively, of adjoining
tracts of land lying one on the one side and one on the
other of the section line between sections ten and
eleven, in township twenty-six North, of range four
East. Sections ten and eleven are each fractional, and
border upon the north shore line of Lake Washington
in King county. In projecting the line between the
sections named, the government surveyor ran southerly
to the lake from the common corner to sections two,
three, ten and eleven. He noted the course of the line
in his field notes as south one degree east, and the dis-
tance as thirty-one chains. For the meander corner on
the margin of the lake, he marked an ash tree which
he reported as being six inches in diameter. As wit-
ness trees to the corner, he marked a cottonwood,
which he reported as being eighteen inches in diameter
and standing north eighty degrees west from the cor-
ner, six links distant, and an alder, three inches in

diameter, standing east of the corner twelve links distant. The government survey was made in 1859.

The controversy in the present action is over the location of the meander corner. It is conceded that there is now nothing remaining of the tree marked as the corner, or of the trees marked as witness trees. The respondent's case rested largely upon the testimony of a Mr. Whitworth, a surveyor and civil engineer. He testified that, in 1878, while surveying a county road for the county of King, he found the meander corner in place. At that time the ash tree marked as the corner and the cottonwood witness tree were standing and bore plainly the markings put upon them by the government surveyor. The alder had then disappeared. The cottonwood tree seems to have been somewhat conspicuous as a monument, the witness saying there was no other of its size either east or west for a distance of more than a thousand feet. The witness next saw the corner some four years later. At this time the wagon road formerly surveyed by him had been constructed, and he noticed that the corner tree had been scarred by passing wagons, and shortly after that it had been cut down, apparently to get it out of the way. The cottonwood tree, however, was left standing, and so stood until the early part of the year 1888. In that year a railroad company, of which the witness was chief engineer, constructed a railroad along the shore of the lake. In the construction work, against his orders, the cottonwood tree was cut down, but leaving a stump sufficiently high to show the marking of the surveyor. The witness saw the stump frequently during the following years up to the year 1908, although the markings early disappeared because of the stump's rotting. In the year last named, the witness called the attention of the county surveyor to his

knowledge of the corner, stating to him that the stump was fast rotting and would soon disappear, and suggested to him the advisability of marking the corner with a permanent monument, and that, acting upon the suggestion, a stone was furnished him by the county surveyor which he set in the position of the original corner. The stone remained for a number of years in position, when it was removed by someone. It was found subsequently by the witness and reset in its former position from data recorded by him while making earlier surveys in the locality. In 1911, Mr. Rutherford, while surveying in that vicinity, had occasion to look for this meander corner. The corner set by the former witness was pointed out to him, and in testing the accuracy of its location, he found the remains of a stump, which a woodsman with him pronounced to be cottonwood, at the course and distance from the corner the government surveyor reported a cottonwood bearing tree. So Mr. Dohm, the chief engineer of the state land department, while surveying the shore lines on Lake Washington, had the corner pointed out, and found the remains of a cottonwood stump in a proper relative position from the corner for the reported cottonwood bearing tree.

In 1909, the appellant, desiring to plat their lands into tracts, employed Mr. Corlett, a civil engineer, to survey the ground and make the plat. In making his survey he adopted the corner set by Mr. Whitworth as the true corner and made his plat accordingly. When the plat was submitted for record it was rejected for the stated reason that the engineering department of King county did not recognize the adopted corner as the true meander corner. Mr. Corlett then established the corner as a lost corner in accordance with the manual of the interior department of the government

for the establishment of lost corners and submitted a plat in accordance therewith. This plat was accepted and recorded. The corner established by Mr. Corlett was some one hundred and fifty feet in a northwest direction from that set by Mr. Whitworth. Neither of these corners agree in alignment from the section corner with that given by the government surveyor, although the corner set by Mr. Corlett is more nearly that given than is the other. Nor do they agree in measurement; the corner set by Mr. Corlett being some twenty-two feet shorter, and the other some seventy-seven feet longer, than the government surveyor reported the distance. A Mr. Hamlin, also a civil engineer, who was formerly a part owner of the land now owned by the appellant, testified that, in 1886, he had occasion to find this corner and made a careful search for it, but could discover no trace of it. It was shown, also, that blazes upon trees, evidently made at the time of the government survey, correspond more nearly with a direct line run between the acknowledged section corner and the corner established by Mr. Corlett than they do with a line run between the section corner and the corner as located by Mr. Whitworth.

While other matters were brought to the attention of the trial court, we find nothing other than the foregoing which seem to us to have a material bearing on the question at issue. On the evidence, the trial court found that the true corner was the corner located by Mr. Whitworth, and entered judgment accordingly. It is from this judgment that the appeal is prosecuted.

There is but little, if any, dispute between the parties as to the law applicable to the case. It is conceded that the true corner is at the place where the government surveyor actually located it, and that when this is known it controls courses, distances, blazes, and the

calls of the official field notes. It is the rule, also, that error in the location of the corner however plainly shown, is not subject to correction by the courts; that the courts must leave the corner where the surveyor established it.

The facts do not admit of extended argument. Mr. Whitworth was an engineer of long practice and wide experience, familiar with the government surveys in this locality and elsewhere. No one questions the soundness of his judgment, his honesty, or his good faith. That he deliberately falsified is not for a moment tenable. If his testimony is not to be taken at its full face value, it must be upon one of two hypotheses, either he was mistaken in his original identification of the corner, or, during the lapse of time between one of his visits to it and his subsequent visit, the corner became obliterated and he mistook a somewhat similar situation for the actual situation. But even the cold type of the record does not admit of either of these explanations. His judgment and experience, and his knowledge of the manner government surveyors were required to mark corners, would not permit a mistake in original identification, and at his subsequent visits to the corner, between the time he first located it and the time he had established data by which it could be located in the absence of the government marks, both the tree marked as the corner and one of the trees marked as a witness to the corner were standing. The evidence supporting the contrary view undoubtedly has weight, but it must be remembered that the government surveys are only approximately accurate, and that the corner as found by Mr. Whitworth is not farther from the place where an accurate survey would place it than are many that can be found in the survey of every township. But we need not pursue the ques-

tion; we are unable to say that the preponderance of the evidence is against the conclusion of the trial court.

The appellant further claims that it has title to the disputed strip in virtue of the statute of limitations. It claims both under the ten-year and the seven-year statutes. But the one requires actual, open, notorious and exclusive possession for the required period, and the others require color of title made in good faith and the payment of taxes for seven consecutive years. There was neither of these. The land was open to the commons until very recent years and the claim of title was only to the true line. The payment of taxes was according to government legal subdivisions, without reference to the particular strip of land in dispute.

It is also assigned that the court erred in rejecting the appellant's proffered testimony to the effect that both the state and county engineers had adopted as the true corner the corner established by Mr. Corlett. The trial court excluded the testimony on the ground of immateriality. Possibly the proffered testimony had relevancy because tending to show the opinion of the state and county expert engineers as to which of the disputed corners was the true corner, but even from this point of view it was extremely remote. If we were, therefore, to treat the evidence as in the record, we cannot think it requires a different result.

Judgment affirmed.

PARKER, C. J., MITCHELL, HOVEY, and TOLMAN, JJ.. concur.