[No. 36882.   Department One.   March 26, 1964.]

JOHN STEWART et al., *Respondents*, v. ELGIE JOHN HOFFMAN
et al., *Appellants.*\*

*Wallace & Fraser*, by *William H. Fraser*, for appellants.

*James B. Sanchez*, for respondents.

MURRAY, J.†—This is an appeal from a judgment fixing the boundaries and quieting title to a tract of land.

The real issue may be simply stated as a boundary dispute. Tract 5, owned by appellants, lies immediately north of and has a common boundary running east and west with respondents' tract 6. The plat which includes these tracts covers property situated on a narrow peninsula jutting northerly into Puget Sound, with water lying immediately to the east and west.

The tracts involved are in Government Lot 7, Section 9,

*Reported in 390 P. (2d) 553.

†Judge Murray is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Township 24, N.R. 1 E.W.M., in Kitsap County, and described as Tracts 5 and 6 of Port Orchard Acre Tracts, Original Series. The two tracts are approximately 450 feet in length running from the roadway (Marine Drive) on the east to the meander line on the west. Tract 5 as platted is 100.5 feet and as surveyed is 100.6 feet from north to south and tract 6 as platted is 100.5 feet and as surveyed is 97.5 feet.

The plat was recorded June 1, 1891, but was not then surveyed and laid out upon the ground. That fact is indicated by the notation on the plat which states:

" . . . all distances are to be taken in proportionate measurements as the government distances may hold. The initial point is the northwest corner of tract No. 1 which is coincident with the intersection of the north line of Lot 7, with the meander line along west side of said lot."

After platting, the tracts were sold and laid out upon the ground; stakes were set; some fences built; the land cleared; buildings erected; bulkhead walls constructed along the waterfronts; shrubs planted and all those things done which show a recognition of established lines and corners. The evidence does not show by whom the lots were actually surveyed and laid out on the ground when the early purchasers went into possession. The boundary monuments, most of which have been in place for at least 25 years, have been accepted as such by the owners.

The appellants became owners of tract 5 in 1938 by deed from appellant wife's mother, Mrs. Stevenson. The appellant wife's parents owned tract 5 since 1919.

Respondents acquired tract 6 in 1937. There was then an old fence at the south boundary. From 1938 to 1940, the tract was substantially cleared of brush and trees up to the north line. At the intersection of the south line with the shore line, there is a concrete bulkhead which has been in place for several years. The tract is not otherwise improved. Tract 5 has some buildings, consisting of a house, a shed and a boathouse. Also, there is a well on the north line, so located by agreement with the adjoining owner to the north. A bulkhead or seawall was built along a portion of the west

side near the northwest corner. There were stakes and monuments definitely marking the lines and corners of tracts 5 and 6 which have been in place since the respective dates of acquisition by the present owners.

The trouble arises over (1) the fact that the platted property was not surveyed and laid out upon the ground at the time the plat was filed, (2) the irregularity of section 9 and the fact that some of the corners were not set; also government lot 7 within section 9 was not marked on the ground, (3) according to the plat, the lot lines conform on the two tiers of lots, one lying to the east and the other west of the dividing north and south road (Marine Drive). As surveyed, the lot lines west of the road vary 50 to 60 feet from those on the east side.

The plat as drawn shows the north line of tract 1 of Port Orchard Acre Tracts to be 2,640 feet north of the south line of section 9 and, according to the surveyors, the north line indicated by a long established fence is actually 2,733 feet. This discrepancy is explained by W. C. Miller in a notation on his plat as follows:

"Note: Apparently the fence lines were obtained from measure from the n. line of section, giving no consideration to the excess length within the section, and by which method I find them approximately correct."

The evidence shows that Mr. Rudd, the owner of tract 4 adjoining appellants' property on the north, discussed the matter of boundaries with Mrs. Stevenson, the appellants' grantor, about the time he purchased his property in 1938. She said that "the middle of the arch and the well and the surveyed stakes was the survey line of the property." She was referring to the north line of tract 5. Those items have been accepted as markers indicating the north line of tract 5 at all times since 1938.

Further, the record discloses that in 1938 or 1939, when respondents were clearing their property of trees, brush and stumps, respondent Mr. Stewart and appellant Mr. Hoffman had a discussion about their common boundary. They then employed L. N. B. Wey to make a survey. He made the survey in 1940 and marked the boundaries of

tracts 5 and 6 and established the line between the tracts as now contended for by respondents. This survey fixed the north-south width of tract 5 at 100.6 feet and tract 6 at 97.5 feet. The south line of tract 6 was along a fence line that had been in place for at least 25 years.

Further, the record shows that respondents and appellant Mr. Hoffman had discussions at times over the meander line boundary on the west. Respondent testified that he did not know his land ran to the meander line and appellant was claiming ownership of some of the shoreland. During the last 3 or 4 years, appellants have dumped fill dirt for a distance of 25 to 30 feet in front of respondents' land along the waterfront at the northwesterly corner, and have cut some brush and small trees on respondents' tract.

In 1960 or 1961, appellant Mr. Hoffman told respondents that he had had an independent survey made that did not agree with the previous surveys and, according to testimony of respondent, the appellant moved the line stakes 1 or 2 feet to the south to the line fixed by the Miller survey and claimed the new location as the correct boundary between tracts 5 and 6.

The evidence refers to three surveys made by competent, experienced men. One made by L. N. B. Wey in 1940, at the request of and paid for by both appellants and respondents. A second survey, by W. C. Miller, was made in 1945 at the request of appellants. A notation on his plat contains the following:

"I hereby certify that this plat of gov. lot No. 7 of section 9, Twp. 24 N. of 'Port Orchard Acre Tracts' recorded, shows the relation survey by L.N.B. Wey for Elgie J. Hoffman under date 3-4-40, and upon which property the improvements stand. Being familiar with the abnormal line conditions existing within this plat, I therefore concur with Mr. Wey in the use of existing old fences as found on adjoining tracts, even tho such location does not conform to description by deed."

The third survey was made at the request of respondents by Ward C. Muller and completed in 1961. This survey further confirmed those previously made. All three surveys confirm the location of tract 6 and the line between tracts

5 and 6 as contended for by respondents except for minor variations or deviations in the placement of corner stakes.

The appellants offer no evidence of an additional survey, but contend that a correct survey would reach a different result. The testimony shows that a correct survey could only be accomplished by subdividing section 9. Such a survey, according to the statement of the engineer, would present many problems because of the water and because the northwest and southwest section corners and section lines, which in this instance are not straight, would have to be established. Furthermore, at least two meander corners must be established. Also the center lines of the section must be determined as half way between the outside boundary lines. The lines of government lot 7 were not set and would have to be established by a method of apportionment. Such a survey would take care of and apportion the extra length (93 feet) in section 9. Where all this would place tract 6, the engineer was unable to say. Thus it can be seen readily why the plat as drawn assumed that the section was regular in dimensions, that the north line of government lot 7 was 2,640 feet north of the southeast section corner, and why the lot lines, fences and monuments as established and acted upon by the owner were accepted by the surveyors in later years.

The appellants argue that a correct survey would probably place tract 5 about 60 feet south of its present location. They claim further that the 60-foot strip between the estimated correct location of the north line of tract 5 and its presently marked location is their property by adverse possession. This would result in tract 5 being increased from 100.6 feet to 160.6 feet and reducing tract 6 from 97.5 feet to 37.5 feet. Such speculation results from the engineer's estimate of what a resurvey and subdivision of section 9 might show. Further, such a conclusion would cast aside the three surveys herein referred to and would disregard the long established and accepted monuments and boundaries.

This case comes within the rule of *Farrow v. Plancich,* 134 Wash. 690, 236 Pac. 288, where we held that an

old survey, accepted by the parties for many years, fixes the true line, even though the survey may be in error.

Again, in *Scott v. Slater*, 42 Wn. (2d) 366, 368, 255 P. (2d) 377, this court said:

" . . . The pertinent rule is that, where a boundary has been defined in good faith by the interested parties and thereafter for a long period of time acquiesced in, acted upon, and improvements made with reference to the line, such a boundary will be considered the true dividing line and will govern. Whether or not the line so established is correct is immaterial. *Mullally v. Parks*, 29 Wn. (2d) 899, 906, 190 P. (2d) 107 (1948), and cases cited.

"The period of time which must elapse before a boundary line is established by acquiescence is the same as is required to secure property by adverse possession. *Thomas v. Harlan*, 27 Wn. (2d) 512, 518, 178 P. (2d) 965, 170 A.L.R. 1138 (1947). In this case, that period is ten years. RCW 4.16.020 [*cf.* Rem. Rev. Stat., § 156]. See 23 Wash. L. Rev. 131."

We conclude that the survey of 1940, which was accepted and acted upon by the parties, and which was confirmed by two later surveys in 1945 and 1961, fixed the boundaries of tracts 5 and 6.

Appellants further contend that the surveys are inaccurate because they show a variance, of from 50 to 60 feet, between lot lines of tracts lying west of the dividing road (Marine Drive) and those on the east side, when the plat shows that they correspond. There is no evidence in the record of an actual survey of the tracts lying east of Marine Drive. In addition, those tracts are not here involved and we cannot make a determination of the proper location of their boundary lines.

Furthermore, we have adopted the rule that where there is a discrepancy between the survey and the plat, the survey controls. *Olson v. Seattle*, 30 Wash. 687, 71 Pac. 201; *Neeley v. Maurer*, 31 Wn. (2d) 153, 195 P. (2d) 628.

Applying this rule, we hold that the actual surveys control rather than the lines of the diagram or plat.

Appellants also allege a "lost boundary" under RCW 58.04.020. They put on no evidence of a lost boundary. Respondents insist that the present surveyed boundaries

are correct. Appellants contend that a new survey would probably place the common boundary about 60 feet south of its present location. The court was correct in concluding that neither party was asserting a lost boundary and therefore the statute did not apply. *Rushton v. Borden*, 29 Wn. (2d) 831, 190 P. (2d) 101.

There was evidence of trespassing by appellants. It consisted of filling and leveling an area 25 by 30 feet at the northwest corner and cutting some brush. We agree with the trial court that the record does not show any substantial damage.

For the reasons stated, the judgment is affirmed.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.