[No. 38303.    Department One.    June 16, 1966.]

EDWIN STAAF *et al., Respondents,* v. PETER BILDER *et al., Appellants.** 

*MacDonald, Hoague & Bayless, Alec Bayless,* and *Raymond E. Brown,* for appellants.

*Stanley N. Kasperson,* for respondents.

HALE, J.—Peter Bilder built an ugly fence. Edwin Staaf, owner of an adjoining tract, says that the fence is not only ugly, but unnecessarily high, shuts off the view, and trespasses. He insists that it be removed from his property and torn down as a nuisance. He complains, too, that Bilder has attempted to widen an easement road beyond its true dimensions and asks that the court restore the road to its original width. The dispute involves tracts 119 and 120, Meadow-

*Reported in 415 P.2d 650.

dale Beach plat, Snohomish County. From a judgment and decree establishing the legal boundary between these tracts, ordering a removal of the fence, and reducing the width of the roadway easement across the northwestern part of tract 119 to its pre-1961 dimensions, the Bilders appeal.

Meadowdale Beach plat, laid out by compass and chain in 1904 in the accepted method of the day, has many inaccuracies and discrepancies, all particularly revealed in surveys from time to time through the more modern transit method of surveying. Mathematically, moreover, the 1904 plat does not close. Although some of the tracts within the plat close mathematically, others do not. Because of these inaccuracies, professional surveyors have come to accept the line of 76th Avenue West, running along the western boundary of tracts 121 and 122, as a fairly reliable base line, it being a well monumented section line running to established section corners; surveyors usually commence their surveys from the southwest corner of tract 121, called the "government quarter corner."

Plaintiffs Staaf acquired tract 119 from Mrs. Staaf's father, John Carlson, in 1956, the property having been in the family since 1907. Defendants Bilder acquired tract 120 in 1960. Thus, plaintiffs' property, tract 119, and defendants' property, tract 120, have a common boundary running north and south, with plaintiffs to the east and defendants on the west of the line.

Bilders constructed a house near and erected a high fence along the entire claimed boundary line that separates their tract 120 from plaintiffs' tract 119. The fence, of solid panel plywood construction, and over 400 feet long, stood 7 to 9½ feet high, depending on the ground contour at the point of measurement, and was secured to four-by-four cedar posts 10 feet high. Except for one segment, the fence shuts off the view of Puget Sound to the west from plaintiffs' property, is unnecessarily and unreasonably high and overtly ugly and unattractive, having no reasonable purpose or need to be either.

From substantial evidence, the court found that a buried

metal pipe used as a monument or marker, discovered by plaintiffs Staaf in preparing for this case, had been placed there during and as a part of a survey prior to 1951; and that this monument marked the southern common corner of the two tracts and, therefore, constituted the southern point of the true boundary line between Staafs' tract 119 and Bilders' tract 120. This marker, as found in place by plaintiffs, was 9.2 feet west of the fence built by Bilder, and, if accepted as the true point of beginning, placed the southern starting point of the fence 9.2 feet on plaintiffs' property.

The trial court from substantial evidence fixed a point on the northern extremity of the boundary between 119 and 120 as the true north terminus and went on to describe and identify with great particularity the exact line between the two points as the true and legal boundary between the two tracts. This northern terminus the trial court established from two known corners by taking a point midway between the west line of tract 121 and the east line of tract 118. Connecting this northern point in a straight line with the buried monument found by plaintiffs 9.2 feet west of the fence on the south gave the court a line deemed to be the true boundary. This boundary, as described by the trial court, puts defendants' fence 9.2 feet over on to plaintiffs' property in some places and more so in others.

The learned trial judge made his findings not only from substantial evidence but from evidence entitled to great weight, presented by both plaintiffs and defendants based on disputed facts and the conflicting conclusions of professional experts. The court received evidence from both parties describing old fences and fence lines, abandoned fences and fence lines, remnants of old and dilapidated fences, and remnants of chicken wire and barbed wire left from fallen and dilapidated fences, and heard testimony describing the history and ownership of the two adjacent tracts. It heard not only the detailed facts but the conclusions of fact derived therefrom by professional surveyors. The record shows that the court considered and

weighed all of this evidence in reaching its findings of fact. Therefore, noting that substantial evidence supports the findings of fact, we accept them as verities. *O'Byrne v. Spokane,* 67 Wn.2d 132, 406 P.2d 595 (1965); *Crawford v. Allen,* 66 Wn.2d 693, 404 P.2d 767 (1965); *West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc.,* 66 Wn.2d 513, 403 P.2d 833 (1965).

As to the disputed easement road, the trial court found that a roadway by prescription across the northwest corner of tract 119 in 1961 had been extended and expanded by defendants sufficiently to constitute an encroachment, and correctly ordered the roadway restored to its original dimensions.

This disposes of all assignments of error directed toward the findings, but leaves one question to be discussed.

■ Where a plat contains substantial mathematical errors and discrepancies and with the passing of time questions arise concerning the true boundaries among its component parcels, the question to be answered is not where new and modern survey methods will place the boundaries, but where did the original plat locate them. The main purpose of a resurvey is to rediscover the boundaries according to the plat upon the best evidence obtainable and to retrace the boundary lines laid down in the plat. 12 Am. Jur. 2d *Boundaries* § 61 (1964). Effort should be made to locate the original corners. Despite discrepancies in the original plat, the known monuments and boundaries of the original plat take precedence over other evidence and are of greater weight than other evidence of the boundaries not based on the original monuments and boundaries. Clark, Surveying and Boundaries § 258 (3d ed. 1959).

■ Courts should ascertain and carry out the intention of the original platters. In case of discrepancy, however, between lines actually marked or surveyed on the ground and lines called for by plats, maps or field notes, the lines marked by survey on the ground prevail (*Stewart v. Hoffman,* 64 Wn.2d 37, 390 P.2d 553 (1964); 11 C.J.S. *Boundaries* § 49 (c) (1938)), save for intervening equities arising by contract, conveyance, estoppel, prescription, or the application of

well-defined legal and equitable concepts. We think the trial court applied these principles in reaching its findings of fact and conclusions of law.

We have considered all assignments of error and are of the opinion that they do not call for further discussion. The judgment is, accordingly, affirmed.

ROSELLINI, C. J., OTT and HUNTER, JJ., and REVELLE, J. Pro Tem., concur.

---

August 31, 1966. Petition for rehearing denied.