[No. 1335-2.    Division Two.    June 30, 1975.]

Joseph Thein, *Appellant*, v. Lee Burrows *et al*,
*Respondents*.

*Joseph Thein*, pro se.

Armstrong, C.J.—Plaintiff, Joseph Thein, brought this action for a permanent injunction and damages for the wrongful cutting of timber on his property. During trial without a jury, each party introduced two surveys attempting to establish a boundary line to be used as a timber cutting line between the two parcels in question. At the conclusion of the trial, the court found that only defendant's survey had been properly conducted and the court accepted that survey to establish the cutting line. Plaintiff appeals from that finding and the resulting dismissal of his lawsuit.

The sole issue on appeal is whether the trial court erroneously accepted defendant's survey, conducted in part by drawing a new meander line along the banks of the Wish-

kah River, rather than plaintiff's survey, conducted in part by reestablishing the original government meander line from the field notes of the original government survey of 1859. We conclude that defendant's survey was erroneously conducted and therefore reverse.

Joseph Thein is the owner of the South 10 acres of the North 20 acres of Government Lot 4 of Section 28, Township 18 North, Range 9 West, in Grays Harbor County. The other parcel of land in question lies immediately south of the Thein parcel and is owned by Michael Jones, not a party to this lawsuit. Both parcels are bordered on the east by the Wishkah River. The defendants, Lee Burrows and T. J. Logging and Construction, timber contractors, entered into an agreement to remove the timber from the Jones parcel. In preparation for the removal of the timber the defendants hired Gene Neva, a licensed surveyor, to determine the timber cutting line, a line constituting the southern boundary of the Thein property and the northern boundary of the Jones property. Upon seeing the stakes from the Neva survey, Thein hired Wright VanderWegen, also a licensed surveyor, to determine the location of the same line. VanderWegen's survey located the line 16 feet south of the Neva line toward the Jones property. Defendant then sent Neva back to the area to recheck his survey line, resulting in a line an additional 20 feet north of his original line and 36 feet north of the VanderWegen line. Defendants then commenced logging the property relying on the second Neva survey. Plaintiff sought and was granted a temporary injunction and brought this action to make the injunction permanent and for damages for timber already cut. In preparation for trial, a fourth survey was conducted at plaintiff's request by another licensed surveyor, Richard Sterling, resulting in a line 40 feet south of the second Neva line and only 4 feet south of the VanderWegen line.[1] The trial court was asked to choose between the second

---

[1] Plaintiff employed Sterling to conduct the second survey because VanderWegen was out of the country at the time.

Neva survey offered by defendants and the Sterling survey offered by plaintiff.

Both Neva and Sterling gave detailed testimony at trial concerning the various methods they utilized to reach their respective conclusions as to the proper location of the timber cutting line. However, for purposes of this appeal, the pertinent portion of their testimony is that relating to the meander line along the Wishkah River. Neva testified that he had run a new meander line along the river in 1966 while conducting an unrelated survey in the area. He further testified that it was this 1966 meander line which he used in attempting to locate the disputed line here in question. Sterling, on the other hand, testified that he used the government field notes from the original 1859 government survey to reestablish the location of the original government meander line. It is important to note here that the legal descriptions of both the Thein and Jones parcels, throughout their respective chains of title, described the parcels only in terms of acreage and never with reference to metes and bounds, courses and distances or natural or artificial boundaries. Therefore, the surveyors clearly had little technical information available to them to aid in their determination of the location of the disputed line.

The general rule governing the determination of boundary lines by resurvey is that the intent of the new survey should be to ascertain where the original surveyors placed the boundaries rather than to determine where new and modern surveys would place them. *Staaf v. Bilder*, 68 Wn.2d 800, 803, 415 P.2d 650 (1966); *see generally* F. Clark, *Law of Surveying and Boundaries* § 258 (3d ed. 1959). We believe that Sterling's attempt to reestablish the original government meander line from the field notes of the original 1859 survey more closely adhered to this general rule than did Neva's use of a meander line, which he drew himself in 1966 without reference to the original survey notes. However, we need not rely solely on this general

rule in concluding that Sterling's approach was the more appropriate of the two before the trial court.

█ It is a well established rule that meander lines are run by government surveyors along the banks of navigable streams to mark the "sinuosities of the stream and for the purpose of determining the areas of fractional subdivisions of the public lands bordering thereon." *Harris v. Swart Mortgage Co.*, 41 Wn.2d 354, 360, 249 P.2d 403 (1952); *Harper v. Holston*, 119 Wash. 436, 205 P. 1062 (1922). The meander lines, therefore, are used primarily as a means of determining the quantity of land in a particular parcel and are not intended to serve the purpose of boundary lines. Rather, in most cases, the boundary is deemed to run to the watercourse itself, unless there is a clear intention to the contrary. *Harris v. Swart Mortgage Co., supra.* This rule of law was recognized by Neva in his testimony at trial. However, it does not necessarily follow, as Neva implied, that original government meander lines may not, or cannot be used as an aid in determining the location of a boundary line perpendicular to the meander line. Rather, the original government meander line may be, and in this case is, the only available, credible evidence of the location of the perpendicular line which will produce the north 20 acres of the Government Lot.

Common sense and the rules of logic dictate that the method employed by Neva of drawing a new meander line and then attempting to locate a perpendicular boundary line with reference to a newly drawn line, could not possibly produce the same perpendicular line intended by the original government survey. A meander line is drawn along the banks of a stream and generally follows the shoreline of that stream. F. Clark, *Law of Surveying and Boundaries, supra* at § 255. Naturally, therefore, due to the passage of time and the inevitable change in the course of the stream, a new meander line, drawn without any reference to the line drawn over 100 years earlier, is extremely unlikely to correspond even remotely to the original line.

It is true that the changing of a stream's course over time may add or detract from the total acreage of a particular tract of land bordering on that stream. *See Ghione v. State*, 26 Wn.2d 635, 175 P.2d 955 (1946). However, the only boundary line which should be affected by the stream's changing course should be the boundary line along the stream and not a boundary line running perpendicular thereto. Therefore, in a case such as this, where the parcels of land have been conveyed in terms of acreage alone since the original government survey, we hold that the original government meander line must be used in determining the appropriate boundary lines of that parcel. We note, however, that this problem will seldom arise in most cases, where there typically are other aids, such as metes and bounds, courses and distances and natural or artificial monuments, available to aid in the location of the correct boundaries.

The judgment of the trial court dismissing Thein's suit is reversed. However, in the absence of Michael Jones as a party to this lawsuit, our holding serves only to establish the cutting line for the timber removal contract and does not operate to establish a legal boundary between the Thein and Jones parcels.

PEARSON and PETRIE, JJ., concur.