**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
9/27/2023
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| MARK McDONALD, an individual,<br><br>Respondent,<br><br>v.<br><br>MICHAEL STERN and EMMA STERN,<br>a married couple,<br><br>Appellants. | No. 83566-1-I<br><br>ORDER GRANTING MOTION<br>TO PUBLISH |

The appellants, Michael and Emma Stern, have filed a motion to publish. The respondent, Mark McDonald, has filed an answer. The court has considered the motion, and a majority of the panel has reconsidered its prior determination not to publish the opinion filed for the above entitled matter on July 24, 2023 finding that it is of precedential value and should be published. Now, therefore, it is hereby

ORDERED that the motion to publish is granted; it is further

ORDERED that the written opinion filed July 24, 2023 shall be published and printed in the Washington Appellate Reports.

_____
Judge

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARK McDONALD, an individual, | No. 83566-1-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| MICHAEL STERN and EMMA STERN, a married couple, | |
| Appellant. | |

BIRK, J. — Michael and Emma Stern appeal from a verdict and quiet title order in favor of their neighbor, Mark McDonald, on claims of timber trespass, waste, and nuisance based on Stern's having cut McDonald's trees, among other damage to McDonald's property. Stern challenges the trial court's order establishing the property line, arguing the trial court failed to give the proper legal significance to a corner monument on which Stern's surveyor relied. Stern additionally challenges the jury's determination of damages for nuisance, asserting the verdict was based on instructional error, insufficient evidence, and improper duplication of damages. Finding no error, we affirm.

I

A

McDonald acquired his property in 2015. Stern was his neighbor to the north. Mature hornbeam trees had lined the boundary between Stern's and McDonald's properties at least since 2001. In 2015, McDonald removed some of

the hornbeam trees and replaced them with arborvitae trees. Stern was upset McDonald had not removed all of the hornbeam trees and began sending "nasty text messages" and making phone calls in which he was "yelling" and "screaming." One text message read, "I think that 4 instead of only 1 German Shepherd wolf be much better. Your gusts & your kids will be allowed to pat them and you and your workers too. Your $5600 grass will work out even better then."

Stern began sawing branches off the trees. McDonald testified there was "constant branch cutting." He observed and photographed a pole saw on Stern's deck. McDonald testified, "[T]here had to be somebody physically on my side trespassing to—to make those cuts." A police officer who had responded to one of McDonald's calls verified branches were being cut on McDonald's side of the trees. The officer testified from his observation of the trees, "they were being . . . destroyed." McDonald captured video of Stern sawing limbs off the trees with the pole saw. McDonald put on evidence of a large rectangular gap cut into the hornbeams directly across from windows on Stern's house. At some point, Stern threw a rock with a note wrapped around it into McDonald's yard, reading "Tree $$$ is a costly dream. Think amicably & u will win!" The previous owner testified he had sued Stern for timber trespass in 2006 for cutting the same hornbeam trees and a jury had found Stern liable for timber trespass.

In 2016, Stern placed paving stones and had additional back-fill added along the property line up to a chain-link fence owned by McDonald. McDonald alleged the back-fill encroached a foot and a half over the property line. According

to the previous owner of McDonald's property, neither the paving stones nor the back-fill were present when he sold the property to McDonald.

Video from May 2019 showed Stern removing a portion of McDonald's fence. McDonald believed Stern burned the fence boards in a fire along with branches removed from McDonald's trees. On August 27, 2019, another fire started by Stern grew out of control. The fire damaged other neighbors' property and caused ember damage to McDonald's lawn. The jury saw photo and video evidence of Stern burning the bonfire in excess of 25 feet high. The trial court excluded Stern's conviction for felony reckless burning resulting from the fire, but instructed the jury the bonfire was not in compliance with law.

McDonald obtained a protection order for himself and his children. The order was extended to a total of four orders. McDonald testified, "The police have been out there 22 times." McDonald did not let his children use the yard because he didn't feel safe due to Stern's conduct. He testified that seeing his trees cut gave him "a feeling of desperation and defeat." McDonald became "paranoid" about "the destruction of my property." It was "like a bad dream that . . . just continues." He testified, "I just didn't feel secure and safe."

Stern denied making any cuttings after McDonald moved in, denied owning a pole saw, claimed he did not know how the rectangular hole got in the trees, claimed he could not see it from his house, claimed the pole instrument photographed on his balcony was not a pole saw but a device for cleaning gutters, claimed a security video of him cutting limbs was doctored, and admitted removing a portion of the fence, but claimed he threw it in the trash.

3

The fence that Stern removed cost roughly $1,000.00. An engineer testified it would cost $30,000.00 to $50,000.00 to create a retaining wall to curb the settling back-fill placed by Stern. The arborvitae trees would have to be removed to do the work from McDonald's property. The cost of replacing the arborvitae trees, including the use of a barge to reach the property, was estimated at $18,210.50. An arborist testified the hornbeam trees are worth approximately $2,800.00 per tree, and it may take 15 years before a hornbeam tree reaches its mature size. He proposed a rehabilitation plan for the trees which would cost $8,280.00.

Finding for McDonald, the jury awarded $64,194.00 for timber trespass, $89,210.00 for waste, and $393,333.00 for nuisance. The trial court imposed treble damages for timber trespass and waste, bringing the principal judgment amount to $853,545.00. Based on McDonald's prevailing on the waste claim, under RCW 4.24.630(1) the trial court awarded $116,637.50 in reasonable attorney fees and $11,913.04 in reasonable costs.

B

Stern defended additionally on the ground that the property line lay approximately 1 ½ feet to the south of where McDonald asserted it lay, with the result that the chain link fence, the area of the back-fill and the paving stones, and the fence Stern removed, all were on Stern's property. By amended complaint, McDonald added a claim for quiet title. The quiet title claim was tried to the court contemporaneously with the jury claims.

The Stern property was previously owned by Lawrence Barsher. Barsher subdivided his parcel to create the Stern property through the recording of the

"Barsher short plat" in 1980. The McDonald property was created by a subdivision recorded in the "Hobbs short plat" in 1981. The legal description on the Barsher short plat was, in relevant part, "the south 100 feet of the north 900 feet of government lot 2." The legal description on the Hobbs short plat was a metes and bounds description, in relevant part starting at "a point on the Westerly boundary line of Government Lot 2," that was "900 feet South 0°21' West of the Northwest corner of said Government Lot 2." The Stern property lies on the south edge of the Barsher plat and the McDonald property lies on the north edge of the Hobbs plat. The legal descriptions on the plats indicate that the boundary between the plats, and therefore the Stern and McDonald properties, is a line 900 feet south of the corner of government lot 2. There was no evidence on when or how parcels were divided establishing that line.

McDonald relied on a survey by Edwin Green, of Terrane Land Surveying. Terrane looked at the legal descriptions of the properties, documents including site plans, and the location of monuments at the properties. The Barsher short plat contained markings indicating the location of corners set with monuments at the time the short plat was recorded. It showed five foot building setbacks from the new lot lines for future construction. Barsher filed site plans in 1990 for the construction of what is now the Stern residence, indicating the location of the home would be five feet from the property line. Terrane also reviewed a site plan for a garage constructed on the McDonald property in 1994, showing the builder intended the garage be one foot from the property line. Terrane's line agreed with existing corners and occupation of the properties, lying five feet from Stern's

5

residence and one foot from McDonald's garage. The Terrane line resulted in 40 feet of waterfront on both Stern's and McDonald's properties, which Green testified reflected both code and the intent of the platters. At the time the respective lots were subdivided, the City of Mercer Island required lots to be 40 feet wide to build a dock.

Stern relied on a survey by Trevor Lanktree. Lanktree's field crew found a monument he identified as marking the corner of government lot 2, a 3-inch brass disk, buried three feet under the dirt. Lanktree based his survey on this monument, and opined that "hard monuments in the street" are the most reliable. According to Lanktree's survey, based on calculating the deed line from this monument, the chain link fence fell on the Stern side of the boundary line. Lanktree did not use the local monumentation around the Hobbs or Barsher short plats. These local monuments did not align with Lanktree's survey. Lanktree testified the local monuments could not be reconciled with the deed line, and that the original platter for the McDonald property subdivision found monuments on the Barsher plat "north of . . . where they had put their line," which he described as an "age consistency" supporting his location of the property line. Although Lanktree did not say so explicitly, he presumably meant the local monuments were displaced northward, meaning the true property line was further to the south than the local monuments implied. According to Lanktree's survey line, McDonald's waterfront is 38.5 feet, and Stern's is 41.5 feet.

Lanktree conceded monuments can be disturbed or moved or destroyed over time. Lanktree could not give an exact date for when the government lot 2

6

corner monument was installed. When asked if the replacement monument his team found was in the precise location of the originally-established corner of government lot 2, Lanktree responded, "The measurements taken from it, I can't tell you that it was in the original location that it was already established in the 1800s." He could not say why the monument was buried three feet underground, but opined it was likely that grading happened in the area that covered the monument, and it was possible the monument was disturbed from its original location during the grading process.

The court quieted title in favor of McDonald, ordering "the property line on the land between Plaintiff's property and Defendants' property is as depicted in the Terrane survey, filed under King County Recording Number 20191115900010, and has been previously marked upon the land." Stern timely appeals.

II

Stern argues the trial court should have quieted title according to the boundary line found in Lanktree's survey because Lanktree used superior historical evidence. Stern argues Lanktree uncovered the government lot 2 corner, and followed legal descriptions to establish the original boundary between the Barsher and Hobbs plats. Stern relies on the principle that "the true corner is at the place where the government surveyor actually located it, and that when this is known it controls courses, distances, blazes, and the calls of the official field notes." Puget Mill Co. v. N. Seattle Improvement Co., 120 Wash. 198, 202-03, 206 P. 954 (1922).

7

No. 83566-1-I/8

Appellate courts generally review findings locating a boundary line for substantial evidence. Staaf v. Bilder, 68 Wn.2d 800, 802-03, 415 P.2d 650 (1966). The parties did not suggest or request that the trial court enter findings, but on appeal they rely on the evidence developed in their respective surveys and the trial testimony by their surveyors. The trial court's ruling is clear, and the trial evidence affords a basis for review.

Thein v. Burrows, 13 Wn. App. 761, 761-62, 537 P.2d 1064 (1975), was a dispute between neighboring parties whose parcels were bounded by the meander line of a river. The legal descriptions of both parcels included only terms of acreage, with no reference to metes and bounds, courses and distances, or natural or artificial boundaries. Id. at 763. One survey established the boundary by drawing a new meander line along the river, more than 100 years after the original line. Id. at 763, 764. The other reconstructed the historical meander line from the field notes from the original 1859 government survey. Id. at 763. We indicated the intent of a new survey should be to ascertain where the original surveyors placed the boundaries rather than determine where a modern survey would place them. Id. at 764. Under this rule, the survey that used the reconstructed historical meander line more closely ascertained the intent of the original surveyors and controlled the boundary line. Id.

Stern does not establish the monument Lanktree found and relied on is entitled to legal weight comparable to the reconstruction from the 1859 survey in Thein. Stern does not contend the monument was an original monument. "In this imperfect world, every conceivable thing has happened, or not happened, to cause

8

a monument to be 'lost' or 'obliterated.' " 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 13.4, at 95 (2nd ed. 2004). Determining the location of a corner in such cases "is a fact-intensive process; the trier of fact must render a decision upon a welter of conflicting and often highly technical bits of information." Id. at 96. In Puget Mill, the court relied on witness testimony to determine the location of a meander corner at the north end of Lake Washington originally established by the government surveyor in 1859 by markings placed on an ash tree, which was no longer extant. 120 Wash. at 199-201. In contrast to Thein and Puget Mill, Lanktree relied on no evidence purporting to reconstruct the location of a corner established in the original government survey. And unlike Thein, there exists additional evidence of the boundary line at issue here.

"The main purpose of a resurvey is to rediscover the boundaries according to the plat upon the *best evidence obtainable* and to retrace the boundary lines as laid down in the plat." Staaf, 68 Wn.2d at 803 (emphasis added). In Staaf, the plat in question had been laid out by compass and chain in 1904, and was known to contain discrepancies. Id. at 801. After hearing evidence of the history of two parcels, past fences, fence lines, and fence remnants, the trial court concluded a buried metal pipe from a past survey established the common corner between two parcels. Id. at 801-02. The Supreme Court held "the *known* monuments and boundaries of the original plat take precedence over other evidence and are of greater weight than other evidence of the boundaries not based on the original monuments and boundaries." Id. (emphasis added).

9

No. 83566-1-I/10

Staaf does not establish an evidentiary priority that aids Stern, but to the contrary supports McDonald. Lanktree did not establish the monument associated with the corner of government lot 2 coincided with the "known" "original" location of the corner. In contrast, the Terrane survey was based on the totality of the "best evidence obtainable," including monuments within the surveyed Barsher and Hobbs plats, the very sort of monument on which Staaf relied. Moreover, Thein looks to the boundary as established by the "original surveyors," as opposed to one newly established by "modern surveys." 13 Wn. App. at 763. Here, the "original" surveys whose boundary is established in the evidence are the 1980 and 1981 surveys of the Barsher and Hobbs plats. The Terrane survey is consistent with the surveyed plats, unlike Lanktree's new measurement.

Stern also relies on cases where a common grantor established a property line. " '[T]he location of a boundary line by a common grantor is binding upon the grantees and their successors in interest, who take with reference thereto.' " Rinehold v. Renne, 198 Wn.2d 81, 91, 492 P.3d 154 (2021) (alteration in original) (quoting Clausing v, Kassner, 60 Wn.2d 12, 15, 371 P.2d 633 (1962)). But there is no evidence this boundary was established by a common grantor preceding Barsher and Hobbs. Further, Angell v. Hadley, 33 Wn.2d 837, 838, 207 P.2d 191 (1949), Atwell v. Olson, 30 Wn.2d 179, 181, 190 P.2d 783 (1948), and Clausing v. Kassner, 60 Wn.2d at 15-16, relied on evidence that the grantees accepted and observed a boundary. And in Turner v. Creech, the grantor's intent was overcome by her and her neighbor's subsequent establishment and acceptance of a boundary through their occupation of neighboring parcels. 58 Wash. 439, 443-44,

10

108 P. 1084 (1910).  The court said, "Practical or agreed location of a boundary line may result from long acquiescence in its location, or when drawn and acted upon by the parties, as where valuable improvements are placed with reference to it and before it is denied by either party."  Id.  at 444.

Stewart v. Hoffman is most analogous to this case.  64 Wn.2d 37, 390 P.2d 553 (1964).  There, a plat was recorded in 1891, but not surveyed and laid out on the ground.  Id. at 38.  After platting, tracts were sold and laid out on the ground, fences built, buildings erected, bulkhead walls constructed along waterfronts, shrubs planted, and "all those things done which show a recognition of established lines and corners."  Id.  The boundary monuments, most in place for at least 25 years, were accepted as such by the owners.  Id.  When a dispute arose about the accuracy of a boundary line, the court held "where a boundary has been defined in good faith by the interested parties and thereafter for a long period of time acquiesced in, acted upon, and improvements made with reference to the line, such a boundary will be considered the true dividing line and will govern.  Whether or not the line so established is correct is immaterial."[1]  Id. at 42.  The court upheld the boundary established by surveys that depended on evidence of occupation even though they did not conform to the description by deed.  Id.

Substantial evidence supported the trial court's adoption of the property line as determined by the Terrane survey.  This defeats Stern's challenge to McDonald's quiet title claim.  Because Stern makes no meritorious challenge to

---

[1] "The period of time which must elapse before a boundary line is established by acquiescence is the same as is required to secure property by adverse possession."  Stewart, 64 Wn.2d at 42.

11

McDonald's waste and timber trespass claims other than based on the location of the property line, this defeats his challenge to those claims also.

III

Stern challenges the nuisance verdict, arguing the jury was inappropriately instructed on damages, there was insufficient evidence to sustain the verdict, and the verdict amounted to a double recovery. We reject these arguments.

RCW 7.48.010 defines "actionable nuisance" as, relevant here:

. . . whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and the subject of an action for damages and other and further relief.

"A nuisance includes acts that annoy, injure, or endanger the comfort, repose, health, or safety of others and that 'renders other persons insecure in life, or in the use of property.' " MJD Props., LLC v. Haley, 189 Wn. App. 963, 969-70, 358 P.3d 476 (2015) (quoting RCW 7.48.120). An unreasonable interference with another's use and enjoyment of property constitutes a nuisance. Boyle v. Leech, 7 Wn. App. 2d 535, 538, 436 P.3d 393 (2019). A defendant's conduct may interfere with the plaintiff's use and enjoyment when it inspires fear that is " 'not entirely unreasonable,' " which the court described as not "unreal, imaginary, or fanciful." Everett v. Paschall, 61 Wash. 47, 53, 111 P. 879 (1910) (quoting Stotler v. Rochelle, 83 Kan. 86, 109 P. 788, 788 (1910)). This fear need not be scientifically founded. Id. at 50-51. "The nuisance and discomfort must affect the ordinary comfort of human existence as understood by the American people in their present state of enlightenment." Id. at 52.

12

Stern initially disputes that he unlawfully entered McDonald's land based on his arguments discussed in section II above. An activity need not be unlawful to constitute a nuisance, MJD Props., 189 Wn. App. at 970, but McDonald sought to establish nuisance only based on unlawful acts including timber trespass, violation of protection orders, and destruction of McDonald's property. Implicit in relying on these acts was reliance on Stern's unlawful entry upon McDonald's land. Because the trial court appropriately quieted title according to the Terrane survey, we reject the argument that Stern's seizing and destroying McDonald's fence, or otherwise entering McDonald's land, was not actionable.

A

Stern argues the court's damages instruction on nuisance was erroneous, because it permitted the jury to consider both diminution in McDonald's property value "and" loss of use. Stern argues that diminution in value and loss of use are alternative remedies, whose applicability is driven by whether the injury to the land is temporary or permanent. " 'Where the injury to land is temporary, the measure of damages is the diminished rental value if the property is to be rented, or the diminished value of its use if the property is to be used by the owner.' " Miotke v. City of Spokane, 101 Wn.2d 307, 332, 678 P.2d 803 (1984) (quoting Barci v. Intalco Alum. Corp., 11 Wn. App. 342, 356, 522 W.2d 1159 (1974)), abrogated on other grounds by Blue Sky Advocs. v. State, 107 Wn.2d 112, 727 P.2d 644 (1986). " 'Where injury to land . . . is permanent and irreparable, the measure of damages is the difference in the market value of the property before and after creation of the nuisance.' " Id. (quoting Barci, 11 Wn. App. at 356).

No. 83566-1-I/14

Stern failed to preserve this issue for review, because he did not object to this instruction with the necessary specificity. CR 51(f) requires a party objecting to a jury instruction to "state distinctly the matter to which counsel objects and the grounds of counsel's objection, specifying the number, paragraph, or particular part of the instruction to be given or refused and to which objection is made." The objection must be sufficiently detailed to " 'apprise the trial judge of the nature and substance of the objection.' " Millies v. LandAmerica Transnation, 185 Wn.2d 302, 310, 372 P.3d 111 (2016) (quoting Crossen v. Skagit County, 100 Wn.2d 355, 358, 669 P.2d (1983)).

Instruction 11 described the elements of damages the jury could consider on each of the three claims the jury received. In reference to the portion of the instruction covering timber trespass damages, Stern argued the instruction should state the jury could award timber trespass damages for diminution in value "or" loss of use, and McDonald and the court agreed. The court invited the parties to comment on the "next paragraph," and then the paragraph after that. Those following paragraphs covered damages for waste and nuisance, both allowing the jury to consider diminution in value "and" loss of use. Stern did not call the court's attention to the instruction's use of "and" rather than "or" in those paragraphs. Stern raised the issue in relation to the timber trespass claim, but never alerted the court to the similar error he now asserts in instruction 11 describing the damages elements for waste and nuisance. This precludes relief on appeal.

Stern points to other colloquy in an attempt to show he raised this issue. Stern objected to the court's giving any instructions on nuisance, but based only

14

No. 83566-1-I/15

on an argument made below, not pursued on appeal, that McDonald had not adequately pleaded the claim. Stern otherwise agreed "the nuisance instructions correctly state the law." Stern also objected to the trial court's refusal of Stern's damages instruction. But Stern's proposed damages instruction was inadequate in that it covered only the value of repairs to damaged property, and failed to include language generally used to instruct on damages, including that the court did not mean to suggest who should prevail and the applicable burden of proof. These exceptions did not alert the court to the now-asserted error in instruction 11's use of "and" rather than "or."

If Stern had preserved this issue, any error would be harmless. Instructing on both diminution in value and loss of use is not a clear misstatement of the law. In cases where, even after an award for repair costs, the plaintiff will additionally endure a permanent loss of market value, the plaintiff is "entitled to an award that combines the two." Pugel v. Monheimer, 83 Wn. App. 688, 693, 922 P.2d 1377 (1996). An erroneous instruction is reversible error only if it prejudices a party, and an aggrieved party must demonstrate prejudice if the instruction is merely misleading. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). McDonald concedes he did not present evidence of a permanent diminution in value, so it was misleading for the instruction to allow consideration of that. Wash. Court of Appeal oral argument, McDonald v. Stern, No. 83566-1-I (Apr. 26, 2023), at 16 min., 00 sec. to 16 min., 15 sec., https://tvw.org/video/division-1-court-of-appeals-2023041318/. But McDonald argued for nuisance damages only based on facts amounting to loss of use,

15

including his not having use of the waterfront and the yard on his property. The jury was instructed that McDonald had the burden proving damages, it was required to consider whether "any particular element" was proved by a preponderance, and it was required to base any award on evidence "and not upon speculation, guess, or conjecture." We presume the jury followed these instructions and based the verdict on losses McDonald established. <u>Wuth ex rel. Kessler v. Labr'y Corp. of Am.</u>, 189 Wn. App. 660, 710, 359 P.3d 841 (2015).

B

Stern argues substantial evidence does not support the nuisance damages verdict. We disagree. "In an action for nuisance, mental anguish resulting from that nuisance is compensable." <u>Wilson v. Key Tronic Corp.</u>, 40 Wn. App. 802, 809-10, 701 P.2d 518 (1985) (fear of present and future health problems from poisoned wells not remote and fanciful); <u>see also</u> <u>Miotke</u>, 101 Wn.2d at 329, 332 (raw sewage discharge supported damages for loss of enjoyment and mental anguish); <u>Riblet v. Spokane-Portland Cement Co.</u>, 45 Wn.2d 346, 355-56, 274 P.2d 574 (1954) (cement dust dispersion supported damages for personal discomfort and annoyance). Recovery for noneconomic damages

> is something additional to diminished value of the use, as that term is ordinarily understood. The value of the use is the value not to particular persons, who may be of peculiar susceptibility to injury, or who may be subject to peculiar conditions or situations, but its general value to ordinary persons for the legitimate uses to which it may be adapted, including in this case use as a homestead. That value is determined by taking into account the various facts and circumstances which make the use more or less desirable, and in determining the extent to which a nuisance may have diminished such value, facts that naturally or reasonably tend to cause discomfort, annoyance, or illness may be taken into account. But the

16

actual discomfort, annoyance, or illness which has resulted in damage or injury to the particular occupant involved is *another and distinct element of damage*.

Riblet, 45 Wn.2d at 354 (emphasis added) (quotations omitted) (quoting Millet v. Minnesota Crushed Stone Co., 145 Minn. 475, 479, 177 N.W. 641, 179 N.W. 682 (1920)). "[T]he determination of the extent of the discomfort and annoyance to plaintiffs, and the amounts which will reasonably compensate them for such injuries, rests largely in the discretion of the jury." Id. at 355.

Appellate review of a jury's verdict is "limited, serving as a backstop to ensure trials are conducted fairly, the law is applied correctly, and the verdict is within the bounds of justice." Coogan v. Borg-Warner Morse Tec Inc.,197 Wn.2d 790, 799, 490 P.3d 200 (2021). This court reviews a jury verdict for substantial evidence, "taking all inferences in favor of the verdict." Klem v. Wash. Mutual Bank, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013). "To the jury is consigned under the constitution the ultimate power to weigh the evidence and determine the facts—and the amount of damages in a particular case is an ultimate fact." James v. Robeck, 79 Wn.2d 864, 869, 490 P.2d 878 (1971). The jury's determination of damages "should be overturned only in the most extraordinary circumstances." Miller v. Yates, 67 Wn. App. 120, 124, 834 P.2d 36 (1992).

In addition to Stern's unlawful acts of timber trespass and waste, the jury was presented with evidence McDonald obtained four anti-harassment orders against Stern and reported repeated violations of those orders. McDonald testified he experienced anxiety and worry about the future and did not feel comfortable using his yard or entertaining guests. Video and photographic evidence showed

17

No. 83566-1-I/18

Stern cutting the trees, the results of the cutting, removal of the fence, and the bonfire. Taking all inferences in favor of the verdict, sufficient evidence exists to support the nuisance verdict.

C

Stern argues that to the extent the jury's verdict is for emotional distress damages, it is a double recovery because the jury also awarded emotional distress in connection with the timber trespass and waste claims. We disagree. A party cannot recover twice for the same injury merely because the injury is redressable through more than one legal claim. Kammerer v. W. Gear Corp., 27 Wn. App. 512, 527, 618 P.2d 1330 (1980), aff'd, 96 Wn.2d 416, 635 P.2d 809 (1981). Kammerer involved a claim for calculable economic damages for failure to pay royalties. Id. The jury here was instructed McDonald was entitled to recover noneconomic damages, and awarded such damages, on each of the claims submitted for timber trespass, waste, and nuisance.

In Vangemert v. McCalmon, 68 Wn.2d 618, 622, 414 P.2d 617 (1966), the court declined to reach the question whether the trial court should have included its instruction on permanent disability where there was allegedly no evidence of one, because the verdict as a whole did "not exceed the amount that could properly be awarded for the pain, suffering, temporary disability, property damage, time loss and other elements of damage that are indubitably established." Id. In Chea v. Men's Wearhouse, Inc., 85 Wn. App. 405, 410-11, 932 P.2d 1261, 971 P.2d 520 (1997), this court analyzed a verdict making separate general damage awards for racial harassment and for intentional infliction of emotional distress. Because the

18

plaintiff's claims allowed recovery for both race-based harassment and distress caused by non-racial aspects of the events at issue, and closing argument separated the two, we upheld the verdict because a double recovery was not established. Id. at 414. Cf. Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 297, 840 P.2d 860 (1992) ("The truth is, very few cases result in plaintiff obtaining exactly one full recovery, no more and no less, regardless of the method of crediting, or offsetting, used.") (analyzing offsets among plaintiff's claims for economic and noneconomic damages against multiple tortfeasors).

The evidence and argument supported the jury's consideration of noneconomic damages associated with Stern's cutting McDonald's trees, the loss of the trees, the waste on McDonald's property, and, separately, McDonald's loss of the use and enjoyment of the land resulting from those acts. In this setting, also, we presume the jury followed the instructions and awarded damages only to the extent McDonald proved them by a preponderance. Wuth, 189 Wn. App. at 710. Because the damages awarded on McDonald's claims do not exceed the amount that could properly be awarded for the noneconomic damages elements appropriately submitted to the jury, and because there is no specific evidence of "double recovery," it is inappropriate for the court to disturb the verdict.

IV

Under RCW 4.24.630(1), a person who commits waste "is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs." Because McDonald is the prevailing party on his waste claim, we

19

No. 83566-1-I/20

award McDonald reasonable costs and reasonable attorney fees on that claim on appeal, subject to his further compliance with RAP 18.1(d). We defer to a commissioner of this court to determine, in the context of a substantiated fee application, the extent to which McDonald's claims on appeal are "so intertwined" that segregation should be required or not required. Boguch v. Landover Corp., 153 Wn. App. 595, 620, 224 P.3d 795 (2009).

Affirmed.

_Birk, J._

WE CONCUR:

_Díaz, J._                    _Dwyer, J._

20