JAMES GALLAGHER *vs.* ABNER B. DODGE AND ANOTHER.

The statute (Gen. Statutes, tit. 19, ch. 17, part 9, sec. 4,) provides that an injunction may be granted against the malicious erection by any owner or lessee of land of any structure upon it intended to annoy and injure any proprietor of adjacent land in respect to his use of the same. *A* and *B* were rivals in business and occupied adjoining stores on a city street, there being no space between the buildings. *A's* store came up to the street line; *B's* was a few feet back, with a platform occupying the intervening space. A plate glass window had some time before been placed in the wall of *A's* store, looking out over *B's* platform, and *A* used it in showing his goods to persons coming down the street on that side. *B* had a show-case made, to place upon his platform in front of this window, his object being, primarily, to display his own goods to the best advantage, and, secondarily, to cover *A's* window and to annoy and injure him in the use of his store. Held not to be a case for an injunction under the statute.

Under the statute the malicious quality of the act must be the predominant one and give it its character.

The question whether a structure was maliciously erected is to be determined rather by its character, location and use, than by an inquiry into the actual motive in the mind of the person erecting it.

And the malicious acts intended by the statute must as a general rule go beyond the petty hostilities of business competition.

CIVIL ACTION, for an injunction, under Gen. Statutes, p. 477, sec. 4, against the malicious erection of a structure intended to injure the plaintiff in the use of his property;

---

* Judge BEARDSLEY of the Superior Court sat in the place of Judge CARPENTER, disabled by illness.

brought to the Superior Court in New Haven County, and tried before *Hovey, J.* The following facts were found by the court, and the finding made part of the record.

The plaintiff's building, known as No. 267 Chapel street, in the city of New Haven, is situated on the north side of that street, and its front is on the line of the street. The first floor is occupied by a store, having a large window in front. The side window mentioned in the complaint is on the west line of the plaintiff's premises. It is of plate glass, and was put in about four years ago to enable persons passing down Chapel street to the east to see the goods kept in the store, and also to admit light. Before putting it in the plaintiff asked the defendants' lessor if he had any objection to his putting in a window there, and he replied that he had none, provided it was understood that the plaintiff should gain no rights thereby as against the lessor.

The building next west of the plaintiff's is set about four feet and six inches back from the street line. Its first floor is occupied by two stores, one on the east side, the other on the west side of the building, and each store has two front windows. The east store for about six years last past has been and still is occupied by the defendants as a clothing store. Its east wall is in contact with the west wall of the plaintiff's building. Between the defendants' east window and the plaintiff's line is a space of blank wall about three and a half feet wide. There is a raised platform or broad step along the whole front of the building from the stores to the street line. Contiguous to the west side of the building is another store building owned by a third party, the front of which is on the street line.

About the first of August, 1879, one Walter Leigh, who had been a clerk in the defendants' store for eight or nine years, left their employment, and in February, 1880, hired the plaintiff's store for a year, for the purpose of carrying on therein the same business that was carried on by the defendants. When that fact became known to the defendants they ordered to be made a box called a show-case, about nine feet in height, four feet wide, and two feet deep, with a gla

front and a wooden back, and with glass on one side and wood on the other, and were about to place the same in front of the southeasterly corner of their store, and within about two inches of the plate glass window of the plaintiff, when they were restrained from so doing by the injunction of this court.

The object of the defendants in ordering the show-case was two-fold—first, to display their own goods to the best advantage, and second, to prevent the public from seeing the goods of Leigh in the plaintiff's store through his plate glass window.

They were not actuated by a malicious intent to annoy or injure the plaintiff in the use or disposition of his building; but they were not on friendly relations with Leigh, and believing that he had hired the store with the design to injure them in their business, they intended by means of the show-case to annoy and injure him in his use of the store. And the effect of the show-case, if placed and kept in the position contemplated by the defendants, would be to reduce the value of the store and to injure Leigh in his business.

As a conclusion of law from these facts the court found the issue for the defendants. The plaintiff brought the record before this court by a motion in error.

*T. E. Doolittle*, for the plaintiff.

The statute was intended to prevent the erectio of a structure, by any person, with intent to injure and annoy his neighbor. It simply applies to such cases the familiar maxim, "*Sic utere tuo, ut alienum non laedas.*" Of this maxim this court says in *Whitney* v. *Bartholomew*, 21 Conn., 217, "the maxim that every man must so use his own property as not to injure another, is known to every lawyer and approved by every moralist." The case finds that the erection of this structure was made "with the design to annoy and injure him," (the plaintiff's tenant) "in the use of the store," but without malice towards the plaintiff himself, and also that "the effect of the show-case, if placed and kept in the position contemplated by the defendants, would be to

reduce the value of the store and injure Leigh (the tenant) in his business." The case thus expressly finds that the defendants intended by means of the show-case to annoy and injure Leigh in his use of the store. An act done with intent to annoy and injure constitutes legal malice. *Twiss* v. *Baldwin*, 9 Conn., 291; *Moore* v. *Stevenson*, 27 id., 14; *Hotchkiss* v. *Porter*, 30 id., 414. So that this was a malicious erection. The structure has its foundation in legal malice, exercised towards the person in possession of the adjacent property; and its erection will injure the proprietor, as it would reduce the value of the store. No such erection would have been dreamed of by the defendants, if the plaintiff had not made a disposition of his property in a manner displeasing to the defendants, that is, leased it to Leigh. The structure has been intentionally erected with an intent to annoy and injure the adjacent proprietor in the use and disposition of his property. 'i _y virtually say to him—"You shall not lease it to Leigh; you may lease it to any one else and we will not annoy you; but if you lease it to Leigh we will injure you by the erection and maintenance of this structure;" and the case is brought within the very mischief of the statute. *Harbison* v. *White*, 46 Conn., 106.

*S. E. Baldwin*, for defendants.

LOOMIS, J. This is a petition for an injunction under the statute (Gen. Statutes, p. 477, sec. 4,) which provides that " an injunction may be granted against the malicious erection by an owner or lessee of land of any structure upon it intended to annoy and injure any proprietor of adjacent land in respect to his use or disposition of the same."

The structure which it is sought to enjoin the defendants against erecting, is a show-case in front of their store and upon their own premises, but to be so placed as to obstruct a side window in the plaintiff's store, which store projects several feet beyond that occupied by the defendants, and thus has space for a side window looking out upon the platform constructed from the front of the defendants' store to the street line. This side window is upon the line between the

premises of the two parties, and serves the occupant of the plaintiff's store both for light and for the display of his goods.

It is found that the object of the defendants in procuring the show-case was two-fold—first, to display their own goods to the best advantage; and second, to prevent the public from seeing the goods of the occupant of the plaintiff's store through his side window.

It was the right of the defendants, and the exercise of the right could not be regarded as unreasonable, to occupy the space between the front of their store and the street line in the way most advantageous to their business. They were under no obligation to consult the interests of an adjoining proprietor. So far as he was availing himself of the open space to secure to himself more light by a window looking out upon it, or an opportunity to display his goods by exposing them in the window, he was availing himself of an opportunity that he held, and must have known that he held, by mere sufferance, for the defendants' store could at any time have been built out in front up to the street line, and so as completely to darken his side window, with no invasion of his rights and no ground of complaint on his part. If possibly a building line established by the city would have prevented them from building out to the street line, the mere fact that the plaintiff's building was erected before the building line was established was one that gave him no rights against the defendants as to the open space in front of their premises. What they might have done so effectually by building out over this space they had an equal right to do in any other mode no more injurious to the adjoining proprietor. We can not see why they might not reasonably do it in the mode which they adopted.

But it is claimed that the whole character of the act as to its legality is changed by the fact that an element of malice went into it. And this brings us to the difficult question where the line shall be drawn between structures that are useful and proper in themselves, but into the erection of which a subordinate malicious motive enters, and those where

the malicious intent is the leading feature of the act, and the possible usefulness of the structure a mere incident.

The only case in which this statute has come up for construction is that of *Harbison* v. *White*, 46 Conn., 106, in which it was held that a coarse structure erected for the malicious purpose of darkening the windows of a neighbor fell within the intent of the statute, although it might serve a useful purpose in screening the defendants' premises from observation. Here the malicious purpose was altogether the predominant one, and the usefulness of the structure very limited and merely incidental. In the present case these conditions are reversed, and it is found that the primary purpose was the reasonable and proper one of displaying the defendants' goods, while the malicious part of the motive was secondary. While we are not prepared to say that this relation of the two motives should always determine the court against the granting of an injunction, and the opposite relation in favor of granting one, yet we regard the predominance of the malicious motive as generally essential to a case in which the court will think itself justified in interfering. The statute speaks of the structure intended as a "malicious erection," and one the intent of which is "to annoy and injure any proprietor of adjacent land." We think we do not go too far in saying that this malicious intent must be so predominating as a motive as to give character to the structure. It must be so manifest and positive that the real usefulness of the structure will be as manifestly subordinate and incidental. The law regards with jealousy all attempts to limit the use to which a man may put his own property. This right to use is always subject to the wholesome limitation of the common law, that every one must so use his own property as not to injure another's, and the person who violates this rule is liable to the person injured whether he has any malicious intent or not; but here the new principle is introduced, that the land owner may erect no structure on his own premises, however lawful it would otherwise be, if he does it maliciously, with intent to annoy his neighbor. The common law has always regarded the existence of malice

in the exercise or pursuit of one's legal rights as of no consequence; just as its absence is of no consequence in the cases of injury caused by wrongful acts. The inquiry into and adjudication upon a man's motives has always been regarded as beyond the domain of civil jurisprudence, which resorts to presumptions of ·malice from a party's acts instead of enquiring into the real inner workings of his mind. When, therefore, we enquire how far a man was actuated by malice in erecting a structure upon his own land, we are enquiring after something that it will always be very difficult to ascertain, unless we adopt, as in other cases where the courts enquire after malice, a presumption of malice from the act done. And in this view of the matter we think no rule can be laid down that is on the whole more easy of application, and more likely to be correct in its application, than that the structure intended by the statute must be one which from its character, or location, or use, must strike an ordinary beholder as manifestly erected with a leading purpose to annoy the adjoining owner or occupant in his use of his premises. If the defendant has erected a house or block on his own land, so close to the dividing line between his lot and his neighbor's as to darken the side windows of his neighbor's house, no one would say that he had done a thing that was mainly intended to annoy his neighbor, and yet in his heart there may have been a malicious delight at the damage he was doing his neighbor. In such a case the obvious propriety of such an erection should determine the question in favor of the party making it, without putting him under oath as to his motives. In the same way, if a land owner should locate a privy or pig-sty directly on his line, and as close as possible to the near parlor windows of his neighbor, or should erect a rough screen of boards before his windows to darken them, the very character and location of the structures would strike every beholder as decisive evidence of an intent to annoy, and of this intent as an entirely predominant one; and a court might very properly so determine without leaving the case to rest on proof, gen-

erally the party's own oath, that there was no malice in the case.

Applying this rule to this case it is very questionable whether any ordinary observer would not see, in the structure here complained of, one which the defendants might reasonably erect, as a proper means of exhibiting their own goods, and a proper use of the space in front of their store, which was theirs for every reasonable and legitimate use, and therefore one of which the plaintiff has no right to complain; while the intent to annoy the occupant of the plaintiff's store, though found as a fact, and though without it the show-case might not have been procured, was really subordinate to the legitimate purpose. But whether or not an ordinary observer would have so regarded the structure, the court has here found as a fact, upon what evidence it does not appear, that the primary object of the defendants was the legitimate one of displaying their goods, and the intent to annoy the neighbor only a secondary one. And we think it therefore, considering all the circumstances, a case that falls within the line, which we do not attempt to define with exactness, that divides structures that the court will not interfere with from those against which the statute intended to furnish a protection.

There is a feature of this case that we ought perhaps to notice more particularly. The occupant of the plaintiff's store and the defendants were rivals in business. It was the right of each not only to show his own wares to the best advantage, but also to prevent the other from getting any advantage in the exhibition of his to which he was not legally entitled. While such competition in all business tends to benefit the public, there are yet many things done in it that are by no means commendable, and which often belong to a low level of morality, but which are yet beyond the control of law. The act of the defendants in this case was, at the worst, of that character. So far as it was intended to annoy the occupant of the plaintiff's store it was not so much from malice, as we ordinarily understand that term, and as we think it is to be understood in the statute, as from

a spirit of competition in business—of ill will perhaps—yet not so much against the object of it as an individual as against him as a rival in business. We do not mean to say that such acts may not be carried so far as to fall within the condemnation of the statute, but we think that, to do so, they must as a general rule go quite beyond the petty hostilities of business competition.

A question was made by the defendants whether the action could be maintained by the plaintiff, as owner of the premises, while the acts complained of were directed wholly against his lessee, who was occupying the store, and whose business, it was claimed, was injured by them. In the view we have taken of the case we have not thought it necessary to consider this question. We have treated the case as if the plaintiff had himself been the occupant.

There is no error in the judgment complained of.

In this opinion the other judges concurred.