[No. C038341. Third Dist. Apr. 30, 2002.]

WENDY WILSON et al., Plaintiffs and Appellants, v.
LEON HANDLEY et el., Defendants and Respondents.

**COUNSEL**

Law Office of James L. Pierce and James L. Pierce for Plaintiffs and Appellants.

Moss & Enochian and Mark D. Norcross for Defendants and Respondents.

**OPINION**

**ROBIE, J.**—"Every body does not see alike. . . . The tree which moves some to tears of joy is in the Eyes of others only a Green thing that stands in the way." (Blake, The Complete Writings of William Blake (1957) p. 793.)

This private nuisance action embodies the truth of William Blake's observation. Plaintiffs Wendy Wilson and Jane Cassady and defendants Leon and Sue Handley are neighbors in the City of Yreka; the Handleys' property adjoins both plaintiffs' properties. When Wilson began building a two-story log house on her property, the Handleys planted a row of evergreen trees along the property line. Afraid the trees would block their views of Mount Shasta, plaintiffs brought this action to require the Handleys to remove the trees. Plaintiffs relied in part on California's spite fence statute (Civ. Code, § 841.4), which declares that any "fence or other structure in the nature of a fence" that unnecessarily exceeds 10 feet in height and is maliciously erected or maintained for the purpose of annoying a neighbor is a private nuisance.[1]

The question presented here is whether a row of trees planted parallel to a property line can be a "fence or other structure in the nature of a fence" within the meaning of the spite fence statute. The trial court concluded that, "at least when they grow naturally and are not pruned or trimmed," a row of trees is not within the scope of the spite fence statute because "[t]rees are neither built [n]or constructed." We disagree. Because the spite fence statute must be liberally construed, we conclude a row of trees can be a "fence or other structure in the nature of a fence" and thus can be a spite fence under section 841.4. Whether the row of trees at issue in *this* case is a spite fence is a matter for the trial court to determine in the first instance. Accordingly, we will reverse the judgment and remand the matter for further consideration.

### Factual and Procedural History

As noted above, plaintiffs and defendants are neighbors in the City of Yreka. Wilson, who is Cassady's daughter, lives next door to her mother, and the Handleys' property is adjacent to both plaintiffs' properties. In the spring of 1997, after learning Wilson planned to build a two-story log home on her property close to their property line, Sue Handley directed a landscape contractor to plant a row of evergreen trees between the Handleys' property and Wilson's property. The trees, which include spruces and Leland cypresses, run parallel to the property line; some of them are within five feet of the line and others are within 10 feet, but most of them are more than 10 feet from the property line. Seventeen of the trees are Leland cypresses, a hybrid specifically designed for screening barriers and windbreaks.

---

[1] "Any fence or other structure in the nature of a fence unnecessarily exceeding 10 feet in height maliciously erected or maintained for the purpose of annoying the owner or occupant of adjoining property is a private nuisance. Any owner or occupant of adjoining property injured either in his comfort or the enjoyment of his estate by such nuisance may enforce the remedies against its continuance prescribed in Title 3, Part 3, Division 4 of this Code." (Civ. Code, § 841.4, hereafter section 841.4 or the spite fence statute.)

In August 1999, shortly after the completion of Wilson's home, Wilson and Cassady commenced this action against the Handleys by filing a complaint for injunctive relief and damages under several legal theories. The only cause of action at issue in this appeal is the second cause of action, which alleged the trees were a spite fence within the meaning of section 841.4. Plaintiffs claimed that if the trees were allowed to grow unabated, they would eventually block both plaintiffs' views of Mount Shasta.

Following a court trial on plaintiffs' claim under the spite fence statute, the court found in favor of the Handleys. The court explained its reasoning as follows: "The predicate to the application of th[e] 'spite fence' rule is a determination that the trees are a 'fence or other structure in the nature of a fence'. We do not doubt that trees can be a fence. Here, however, we are concerned with statutory construction. The word 'fence' is qualified or limited by the phrase 'or other structure'. Trees are neither built [n]or constructed. They grow. This is true at least when they grow naturally and are not pruned or trimmed. At present all of the trees in dispute are in their natural state. [¶] We therefore conclude that plaintiffs can not prevail . . . because these trees are not a fence or a structure in the nature of a fence and [we] do not reach the other close and troubling issues relative to maliciousness and intent to annoy."

After the court entered judgment, plaintiffs appealed.

### Discussion

 Plaintiffs contend the trial court misinterpreted section 841.4 when it concluded a row of trees in their natural state cannot be a spite fence. Plaintiffs argue "a row of trees planted parallel to a common boundary line" may be a "fence or other structure in the nature of a fence" within the meaning of the spite fence statute.

The Handleys disagree and also contend that, regardless of whether a row of trees can be deemed a "structure in the nature of a fence" under the spite fence statute, plaintiffs' nuisance claim "has no legal substance as a matter of law" because a structure "is not a nuisance solely because it interferes with a view." In other words, the Handleys suggest, a structure the spite fence statute expressly declares to be a private nuisance is nonetheless not actionable as a private nuisance if all it interferes with is light and air.

### I

We turn first to the question of whether a row of trees can be a "fence or other structure in the nature of a fence" within the meaning of section 841.4.

■ "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

■ In construing the spite fence statute, we are bound by the rule of liberal construction that applies to the Civil Code. "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this State respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice." (Civ. Code, § 4.) Thus, the question for us to decide is whether, liberally construing the spite fence statute with a view to effecting its objects, a row of trees may be deemed a "fence or other structure in the nature of a fence" within the meaning of that statute.

The Handleys take the position, which the trial court apparently adopted, that a row of trees cannot be a "structure in the nature of a fence" because "[t]rees are not a 'structure.'" According to the Handleys, "[a] structure, by definition, is a 'thing built or constructed, as a building or dam,'" and trees are grown, not built or constructed. We do not dispute that trees grow. The question, however, is not whether a single growing tree can be a structure, but whether a *row* of growing trees can be a structure. We conclude that it can.

Defined broadly, a "structure" is "something arranged in a definite pattern of organization." (Webster's Collegiate Dict. (10th ed. 2000) p. 1163, col. 2.) Under this broad definition, a row of trees, arranged in a line by the person who planted them, could easily constitute a "structure." The Handleys would have us apply a narrower definition of the word "structure," as "something constructed or built." (Webster's New Internat. Dict. (2d. ed 1938) p. 2501, col. 1.) Even if we apply that narrower definition, however, we conclude a row of trees may be a "structure."

To "construct" something is to "put together [its] constituent parts . . . in their proper place and order." (Webster's New Internat. Dict., *supra*, p. 572, col. 3.) Although, to paraphrase a famous poem, only God can construct a

tree,[2] any enterprising individual with a shovel and some saplings can construct a *row* of trees by simply planting the saplings in their proper place and order—in other words, in a row. Because a row of trees can be constructed, a row of trees can be a "structure" even within the narrower definition of that word the Handleys advocate.

The question that remains is whether a row of trees can be a structure "in the nature of a fence." The Handleys suggest it cannot because "[a] line of unconnected trees cannot prevent intrusion nor straying from within." While it is true one definition of the word "fence" is "an enclosing structure . . . intended to prevent intrusion from without or straying from within" (Black's Law Dict. (5th ed. 1979) p. 556, col. 2), a "fence" can also be a "structure . . . erected . . . to separate two contiguous estates" (*ibid.*) or "a barrier intended . . . to mark a boundary" (Webster's Collegiate Dict., *supra*, p. 428, col. 1). In light of the history and purpose of the spite fence statute, we conclude these latter definitions more accurately express what constitutes a "fence or other structure in the nature of a fence" within the meaning of section 841.4.

The rise of spite fence statutes in the United States stems from the general repudiation in this country of the English doctrine of "ancient lights," under which a landowner could acquire an easement over adjoining property for the passage of light and air. (See *Western etc. Co. v. Knickerbocker* (1894) 103 Cal. 111, 113 [37 P. 192]; *Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 127 [99 Cal.Rptr. 350].) "Such a doctrine was ill-suited to conditions existing in the early part of this century in a new and rapidly growing country. At that time society had a significant interest in encouraging unrestricted land development. Moreover a landowner's rights to use his land were virtually unlimited; it was thought that he owned to the center of the earth and up to the heavens. In contrast, light had little social importance beyond its value for aesthetic enjoyment or illumination." (*Sher v. Leiderman* (1986) 181 Cal.App.3d 867, 876 [226 Cal.Rptr. 698].)

Under American common law, it was said that "a man has a right to build a fence on his own land as high as he pleases, however much it may obstruct his neighbor's light and air." (*Rideout v. Knox* (1889) 148 Mass. 368, 372 [19 N.E. 390, 391].) Thus, in the 1870's, when Charles Crocker sought to purchase an entire city block on San Francisco's Nob Hill on which to build a mansion, and a local undertaker named Yung would not sell his small lot to Crocker, Crocker bought the remainder of the block and built a fence 40 feet high on his property around Yung's lot. (Lewis, The Big Four (1951) pp. 111, 118-119.) Eventually, Yung sold out and Crocker procured the entire block.

---

[2]Kilmer (1914) "Trees."

In the 1880's, however, courts and legislatures began addressing the issue of whether a fence like Crocker's, built unnecessarily high, simply to spite a neighbor, could be deemed a private nuisance subject to abatement. (See Comment, *Torts: Spite Fence* (1917) 5 Cal. L.Rev. 177.) In 1887, Massachusetts enacted one of the earliest "spite fence" statutes in the United States, expressly declaring such fences a private nuisance. (See *Rideout v. Knox, supra*, 148 Mass. 368 [19 N.E. at p. 391], citing Mass. Gen. Laws ch. 348, § 1 (1887) [now codified as Mass. Ann. Laws ch. 49, § 21 (Law. Co-op 1993)].) Other states followed suit. (See, e.g., Ind. Code Ann. § 32-10-10-1 (West 2001); Me. Rev. Stat. Ann. tit. 17, § 2801 (West 1964); N.H. Rev. Stat. Ann. § 476:1 (1955); R.I. Gen. Laws § 34-10-1 (1956); Wis. Stat. Ann. § 844.10 (West 1994).) Meanwhile, beginning in 1888, courts in some states began to hold that a fence erected for no purpose except to harm a neighbor could be abated as a nuisance under the common law. (See *Burke v. Smith* (1888) 69 Mich. 380 [37 N.W. 838]; Annot., Spite fences and other spite structures (1941) 133 A.L.R. 691, 692-697, § II.a., and cases cited.)

In California, a predecessor to the current spite fence statute regulating the height of division fences and partition walls in cities and towns was enacted in 1885. (Stats. 1885, ch. XXXIX, p. 45.) Under this earlier law, a landowner could not build a fence or partition wall more than 10 feet high without obtaining a permit from the board of supervisors or the city council, and the governmental entity could not grant the permit unless the landowner secured the written consent of the owner or occupant of the adjoining property affected by the proposed fence or wall. (See *Western etc. Co. v. Knickerbocker, supra*, 103 Cal. at p. 114.) The California Supreme Court concluded that if the Legislature intended the law to apply to a structure built entirely on the landowner's property, it was unconstitutional because it was not "competent for the legislature to vest in [a landowner] the power to prevent his neighbor from building such structure as he pleases, provided it is not a nuisance, and it is not such merely because it obstructs the passage of light and air." (*Id.* at p. 115.) Accordingly, to render the law constitutional, the court construed it as applying only to fences built on the boundary line and thus resting partly on the land of the adjoining owner. (*Id.* at p. 116.)

In 1913, the Legislature joined a growing number of states and adopted the current spite fence statute, which was likely drawn from the Massachusetts statute, declaring it a private nuisance to maliciously erect or maintain "[a]ny fence or other structure in the nature of a fence, unnecessarily exceeding ten feet in height . . . for the purpose of annoying the owner or occupants of adjoining property, . . ." (Stats. 1913, ch. 197, § 1, p. 342.) The statute was upheld against constitutional challenge in 1920. (*Bar Due v. Cox* (1920) 47 Cal.App. 713, 716 [190 P. 1056].) The spite fence statute

remained uncodified until 1953, when it was codified as section 841.4 of the Civil Code. (Stats. 1953, ch. 37, § 2, p. 674.)

Despite the existence of similar spite fence statutes in a number of other states, we have been unable to find any case in which a court has held that a row of trees can be a "fence or other structure in the nature of a fence." The closest case we have found is a decision by the Washington Court of Appeals, in which that court held a row of trees along a property line might be a "fence" within the meaning of a restrictive covenant. (*Lakes at Mercer Island v. Witrak* (1991) 61 Wash.App. 177 [810 P.2d 27].) The absence of any authority directly on point, however, does not mean that a row of trees can never be considered a "structure in the nature of a fence" for purposes of a spite fence statute like section 841.4. As shown by the discussion above, spite fence statutes were enacted to prevent what would otherwise be the lawful practice of a landowner erecting or maintaining an unnecessarily high barrier between his or her property and an adjoining property to annoy the neighboring landowner. In light of this statutory purpose, a structure need not be built to prevent intrusion from without or straying from within to be a "fence or other structure in the nature of a fence" within the meaning of the spite fence statute. Instead, the structure need only be built to separate or mark the boundary between adjoining parcels—albeit, in an unnecessarily high and annoying manner. (See *Lovell v. Noyes* (1898) 69 N.H. 263 [46 A. 25] [noting that a fence, "in the ordinary meaning of the term," is "a structure erected upon or near the dividing line between adjoining owners, for the purpose of separating the occupancy of their lands"].)

Given the purpose of spite fence statutes like section 841.4, and the rule of liberal construction that applies to section 841.4, we conclude a row of trees planted on or near the boundary line between adjoining parcels of land can be a "fence or other structure in the nature of a fence." The Handleys argue, however, that a row of trees cannot be a *spite* fence because it is the "natural condition" of trees to be more than 10 feet high, and a fence must "unnecessarily" exceed 10 feet in height to be a spite fence under section 841.4.

As we read the spite fence statute, the question whether a particular fence or fence-like structure "unnecessarily" exceeds 10 feet in height cannot be answered without reference to the ostensible purpose or purposes the defendant claims for the structure. The spite fence statute expresses the judgment of the Legislature that a fence—that is, a structure built to separate or mark the boundary between two adjoining parcels—does not need to be more than 10 feet high to serve that purpose. However, if a fence or fence-like structure serves some other purpose as well, then its height above

10 feet may be justified by that additional purpose. (See *Rideout v. Knox, supra*, 148 Mass. 368 [19 N.E. at p. 392] ["Even the right to build a fence above [the statutory limit] is not denied when any convenience of the owner would be served by building higher. . . . If the height above [the statutory limit] is really necessary for any reason, there is no liability"].)

For example, in *Lovell v. Noyes, supra*, 69 N.H. 263 [46 A. 25], the Supreme Court of New Hampshire addressed whether a shed that was 15 feet tall and used for storing carriages could be deemed a spite fence. The court acknowledged the structure was "designed to take the place of a 'fence' " and that "[t]here was evidence tending to show that it was erected for the sole purpose of annoying the plaintiff." (*Ibid.*) Nevertheless, the court reversed a verdict in favor of the plaintiff because "[a] building, whether it be a dwelling house, warehouse, stable, or shed for the storage of carriages, etc., must be more than five feet in height, to be of utility." (*Ibid.*)

 Here, Sue Handley testified they planted the row of trees for aesthetic purposes and to protect their privacy. If the trial court credits Sue Handley's testimony, then the court could reasonably conclude that the trees—even if they are a "structure in the nature of a fence"—do not exceed 10 feet in height "unnecessarily" if their growth in excess of 10 feet is necessary to maintain their aesthetic qualities or to protect the Handleys' privacy. On the other hand, if the court discredits Sue Handley's testimony and finds that the trees serve no purpose other than to separate or mark the boundary between the adjoining parcels and to annoy plaintiffs, then the court could reasonably conclude that the trees "unnecessarily" exceed 10 feet in height. In any event, this is a determination for the trial court to make in the first instance. It is sufficient for our purposes that we reject the Handleys' suggestion that a row of trees can never "unnecessarily" exceed 10 feet in height for purposes of the spite fence statute.

## II

 The Handleys also contend that even if a row of trees can be a spite fence under section 841.4, plaintiffs cannot prevail on their private nuisance claim under the statute because "[t]he *sine qua non* of a private nuisance cause of action is an interference with the use and enjoyment of an interest in private property" and "there is no recognized property right in a view in the State of California." The cases upon which the Handleys rely are inapposite, however, because none of them involved an application of the spite fence statute. It might be true that, absent the spite fence statute, a fence that interfered only with light and air would not be a nuisance under

the general definition of a "nuisance" in Civil Code section 3479.[3] (See *Sher v. Leiderman, supra,* 181 Cal.App.3d at pp. 875-880.) That does not mean, however, that a fence which violates the spite fence statute must interfere with something more than light and air to be a nuisance under *that* statute. Section 841.4 specifically provides that a fence or other structure in the nature of the fence that meets certain requirements "is a private nuisance." Section 841.4 does not specify that the fence must interfere with something more than light and air to be a nuisance, and we are not at liberty to read any such additional requirement into the statute.

Nor, as the Handleys suggest, are we required to imply such a requirement into the spite fence statute for the statute to pass constitutional muster. The Handleys do not dispute the Legislature has the general power to declare certain conduct a nuisance. (See *People ex rel. Dept. of Transportation v. Maldonado* (2001) 86 Cal.App.4th 1225, 1235-1236 [104 Cal.Rptr.2d 66].) The Handleys contend, however, that the Legislature cannot declare as a nuisance a structure that interferes only with light and air because "the Legislature is incompetent to create" "any express or implied easement in light, air or a view." To support that contention, the Handleys rely on the California Supreme Court's decision in *Western etc. Co. v. Knickerbocker, supra,* 103 Cal. 111, in which the court narrowly construed the predecessor of the spite fence statute to render the statute constitutional. There, the court wrote: "Merely owning the adjoining lot does not give the proprietor an easement over the property of another for the passage of light and air. Nor is it competent for the legislature to vest in such proprietor the power to prevent his neighbor from building such structure as he pleases, provided it is not a nuisance, and it is not such merely because it obstructs the passage of light and air." (*Id.* at p. 115.)

However, in the spite fence statute before this court, the Legislature declared as a nuisance only those fences and other fence-like structures that are unnecessarily more than 10 feet high and that are maliciously erected or maintained for the purpose of annoying a neighbor. Thus, what makes a spite fence a nuisance under section 841.4 is not merely that it obstructs the passage of light and air, but that it does so unnecessarily for the malicious purpose of annoyance. While the Legislature may not have the power to

---

[3]"Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance." (Civ. Code, § 3479.)

declare a structure a nuisance merely because it obstructs the passage of light and air, the Handleys cite no authority to suggest the Legislature cannot declare a structure that blocks light and air a nuisance when that structure is built or maintained for the malicious purpose of annoying a neighbor.

As previously noted, California's spite fence statute was upheld against constitutional challenge more than 80 years ago. (*Bar Due v. Cox, supra,* 47 Cal.App. at p. 716.) The Handleys offer us no occasion to revisit that conclusion, and therefore we need not read any restrictions into the statute to save it from constitutional attack.

## III

Finally, the Handleys contend that even if a row of trees can be a spite fence within the meaning of section 841.4, the row of trees on their property is not a spite fence because plaintiffs cannot prove the "malice" element of the statute. According to the Handleys, a structure is not a spite fence under section 841.4 unless it "has no utility and was intended solely to annoy the neighbor." They contend there is insufficient evidence in the record to support a finding that their row of trees meets this standard. Plaintiffs dispute the Handleys' formulation of the "malice" element of the statute but offer no alternative formulation.

In upholding the Massachusetts spite fence statute against constitutional challenge more than 100 years ago, the Supreme Judicial Court of Massachusetts explained the "malice" element of the statute as follows: "The fences must be 'maliciously erected, or maintained for the purpose of annoying' adjoining owners or occupiers. This language clearly expresses that there must be an actual malevolent motive, as distinguished from merely technical malice. . . . [W]e are of opinion that it is not enough to satisfy the words of the act that malevolence was one of the motives, but that malevolence must be the dominant motive,—a motive without which the fence would not have been built or maintained. A man cannot be punished for malevolently maintaining a fence for the purpose of annoying his neighbor merely because he feels pleasure at the thought he is giving annoyance, if that pleasure alone would not induce him to maintain it, or if he would maintain it for other reasons, even if that pleasure should be denied him." (*Rideout v. Knox, supra,* 148 Mass. 368 [19 N.E. at p. 392].)

Under the decision in *Rideout v. Knox, supra,* 148 Mass. 368 [19 N.E. 390], the intent to annoy the neighbor need not be the *sole* purpose for building or maintaining the fence, as the Handleys suggest, but it must at

least be the "dominant" purpose. Courts in other states with similar spite fence statutes have also required a showing that annoyance was the dominant purpose. (See *Lord v. Langdon* (1898) 91 Me. 221 [39 A. 552]; *Karasek v. Peier* (1900) 22 Wash. 419 [61 P. 33].)

We likewise adopt the "dominant purpose" test for determining whether the "malice" element of section 841.4 has been satisfied. Accordingly, the pertinent question is whether the Handleys' dominant purpose in planting the row of evergreen trees along their property line with plaintiffs was to annoy plaintiffs. This is a factual determination to be made by the trial court in the first instance based on the evidence received at trial. If the trial court finds the Handleys planted the trees primarily for reasons other than to annoy plaintiffs—for example, to "beautify" their property or to protect their privacy from the two-story log house looming next door, as the Handleys claimed, then annoyance was not the dominant purpose of the row of trees and the "malice" element of section 841.4 is not satisfied. On the other hand, if the court finds the Handleys planted the trees primarily to annoy plaintiffs, and other purposes such as aesthetics and privacy, if any, were only subordinate to the dominant purpose of annoyance, then the "malice" element has been satisfied.

## CONCLUSION

In conclusion, the trial court erred when it determined a row of trees in their natural state can never be a "fence or other structure in the nature of a fence" within the meaning of section 841.4. A row of trees planted along or near the property line between adjoining parcels to separate or mark the boundary between the parcels is a "structure in the nature of a fence" and may be a spite fence under section 841.4 if the other elements of the spite fence statute—unnecessary height above 10 feet and dominant purpose of annoying the neighbor—are met. It is for the trial court in the first instance to make the necessary factual findings, based on the evidence received at trial, to determine whether the row of trees in *this* case satisfies all of the elements of the spite fence statute. Accordingly, we will remand the case to the trial court for that purpose.

## DISPOSITION

The judgment in favor of defendants on plaintiffs' second cause of action is reversed and the case is remanded to the trial court for further proceedings on that cause of action. On remand, the trial court is to apply section 841.4

to the evidence received at trial. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 26(a).)

Scotland, P. J., and Callahan, J., concurred.