PETER F. DALTON ET AL. *v.* NICHOLAS J. BUA ET AL.

Superior Court, Judicial District of New Haven—File No. CV03-0472311S

Memorandum filed March 4, 2003

*Tyler, Cooper & Alcorn,* for the plantiffs.

*Howd & Ludorf,* for the defendants.

BLUE, J. Is a hedge a "structure"? That question is presented by the motion to strike now before the court in a case alleging violation of Connecticut's "malicious structure" statutes, General Statutes §§ 52-480 and 52-570. For reasons briefly set forth below, the answer to the question is, "No."

The plaintiffs, Peter and Maureen Dalton,[1] and the defendants, Nicholas and Frieda Bua, live across from each other on Hotchkiss Lane in Madison. The complaint (which, for purposes of this motion, must be taken as true) alleges that the Bua property contains two hedges. The hedges were approximately four feet high in 1989. The complaint asserts that, out of animosity, the Buas "have allowed [one hedge] to grow to a height of eight to nine feet along Hotchkiss Lane directly across from the Dalton [property], creating a visual barrier that now obstructs and hinders the plaintiffs from viewing Long Island Sound from their property."

This action was commenced by service of process on December 7, 2002. The complaint consists of a single count and alleges a violation of §§ 52-480 and 52-570.

The motion to strike now before the court was filed on January 16, 2003. The motion was heard on March 3, 2003.

Section 52-480 provides that "[a]n injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same." General Statutes § 52-480. General Statutes § 52-570 provides that "[a]n action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land." General Statutes § 52-570. Each statute turns on the presence of a "structure."

---

[1] The complaint names a separate set of landowners, Elliott and Charlotte Brotz, as additional plaintiffs. The summons, however, names only the Daltons as plaintiffs, and no appearance has been filed for the Brotzs. The argument at the hearing was made only on behalf of the Daltons. Consequently, only the allegations of the Daltons are addressed here.

Sections 52-480 and 52-570 were originally enacted as parts of a single statute in 1867. Public Acts 1867, c. XXX. The 1867 statute provided legal and equitable relief for the malicious erection of "any building or structure." Public Acts 1867, c. XXX, § 1. In the century and a half since its enactment, the statute and its successors have been applied only against man-made constructions. See *DeCecco* v. *Beach*, 174 Conn. 29, 381 A.2d 543 (1977) (fence); *Whitlock* v. *Uhle*, 75 Conn. 423, 53 A. 891 (1903) (same); *Gallagher* v. *Dodge*, 48 Conn. 387, 40 A. 182 (1880) (show-case); *Harbison* v. *White*, 46 Conn. 106 (1878) (boards and posts). Hedges, which have been planted since biblical times; see Mark 12:1; obviously existed in 1867, but neither the legislature in enacting the statute nor the courts in interpreting it since have suggested that they can be "structures" within the meaning of the statutory text.

Our Supreme Court has had occasion to consider the meaning of the term "structure" in a different statutory context. In *Hendryx Co.* v. *New Haven*, 104 Conn. 632, 635, 134 A. 77 (1926), the court held that an overhead conveyor was a "structure" within the meaning of a building code provision that required a permit " '[b]efore the erection, construction or alteration of any building or structure.' " In holding that the conveyor in question fell under this ordinance, the court defined the term "structure" in what it described as the term's "widest sense." Id., 640. Under that broad definition, the court, quoting the Century Dictionary, stated that a "structure" "includes 'any production or piece of work artificially built up, or composed of parts and joined together in some definite manner.' " Accord Black's Law Dictionary (7th Ed. 1999) 1437, defining "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *Hendryx Co.* opines that this definition includes "many forms of stuctures . . . which are not

in any sense independent buildings, as, for example, bay windows, signs attached to the sides or roof of a building, passways, bridges or arches between buildings, all forms of structure in mines, billboards, platforms and staging." *Hendryx Co.* v. *New Haven,* supra, 641. The court, however, has since held that even this broad definition is not limitless. See *Alderman* v. *Hanover Ins. Group,* 169 Conn. 603, 609, 363 A.2d 1102 (1975). An obstruction that is not "artificially built up" is not a "structure."

The walls and fences at issue in the malicious structure cases decided since 1867 have been constructions built by persons. When a construction is malicious, the law says, "Don't build it." Hedges, however, grow naturally. There is no suggestion that the hedge in question here was maliciously planted. The suggestion, rather, is that it has maliciously been allowed to grow. (The Daltons seem not to mind a four-foot hedge; it is an eight-foot or nine-foot hedge that bothers them.) Rather than, "Don't build it," the Daltons want the law to say, "You must trim it." This is a significant difference. The complaint is not that the Buas have *done* something. The complaint, rather, is that they have *not* done something. Whatever the problems of the action/inaction distinction in the tort or criminal law; see *State* v. *Miranda,* 245 Conn. 209, 715 A.2d 680 (1998); that distinction lies at the textual heart of the malicious structure statutes in question here. These statutes prohibit malicious "structures" from being "erected." They do not require naturally growing plantings to be affirmatively trimmed.

The Daltons argue that the *effect* of the Buas' hedge is similar to that of the traditional spite fence—it blocks their view. While this may be the case, it does not make the malicious structure statutes they have invoked applicable to their problem. Hedges are rows of trees, and trees are everywhere. Many trees are tall, bushy, and entirely capable of blocking views. The natural

growth of trees is an inescapable fact of life. The law is reluctant to compel possessors of land to alter the natural condition of their property; see *Sawicki* v. *Connecticut Ry. & Lighting Co.* v. *New Haven,* 129 Conn. 626, 633, 30 A.2d 556 (1943); and the courts should be reluctant to interpret ancient statutes like those before it now to impose such a new duty. A statutory duty potentially extending to every tree owner in the state must be imposed by the legislature.

For the reasons stated, a hedge is not a "structure" within the meaning of Connecticut's malicious structure statutes. This conclusion is consistent with New York decisional law holding that hedges are not "structures" for purposes of New York's analogous statute, N.Y. Real Property Actions and Proceedings Law § 843 (McKinney 1979). *Downe* v. *Rothman,* 215 App. Div. 2d 716, 717, 627 N.Y.S. 2d 424 (1995).

The motion to strike is granted.