## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MJD PROPERTIES, LLC, a Washington limited liability company, | ) ) ) | No. 71691-3-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| JEFFREY THORNTON HALEY, | ) ) | |
| Appellant. | ) ) ) | FILED: September 8, 2015 |

LEACH, J. — Jeffrey Haley appeals the trial court's summary dismissal of his nuisance and spite structure claims against his neighbor, MJD Properties LLC, as well as the court's denial of his fee request. Because Haley demonstrated a genuine issue of material fact about the reasonableness of MJD's driveway light installed in compliance with the Mercer Island Code, we reverse the dismissal of his nuisance claim. And because a large planted tree, in some circumstances, may be a spite structure prohibited by RCW 7.40.030, we reverse the dismissal of Haley's statutory claim. But the trial court properly decided that Haley was not a prevailing party entitled to recover attorney fees and costs. We remand for further proceedings consistent with this decision.

### FACTS

Jeffrey Haley, John Pugh, and MJD Properties LLC own neighboring

properties on Mercer Island. In December 2011, John Pugh formed MJD. MJD then bought waterfront property next to Pugh's waterfront property from Nancy and Duane Oyler. Haley's property sits inland, behind both properties.

For many years, Haley attempted to acquire water access and a view easement over the MJD property. Before Haley bought his property, Pugh planted a weeping copper beech tree on the Oylers' property, with their permission, located 8 feet from what is now Haley's view window. In 2005, when Haley purchased his property, the tree was about 16 feet tall. Haley claims the Oylers gave him oral permission to trim the tree if it grew substantially taller. It grew to be 21 feet tall. In August 2011, before the Oylers sold the property to MJD, but after they had moved out, Haley, without their permission, trimmed several feet off the top of the beech tree. The Oylers assigned their claim against Haley to MJD in May 2012. MJD installed a 6-foot fence along the property line.

On July 10, 2012, MJD sued Haley for timber trespass, trespass, and outrage. On July 30, 2012, Haley answered and asserted several counterclaims, including that MJD had wrongfully interfered with Haley's property when it removed Haley's columbine plant during the fence installation.

In September 2012, MJD installed a light pole with a protective, adjustable shield in his parking area. The light shines into Haley's bedroom windows. The

bottoms of these windows are 10 feet higher than MJD's parking area. Haley requested that MJD adjust the shield. When MJD refused, Haley complained to the city.

In November 2012, MJD removed the beech tree on its property and planted an 18-foot cedar tree in the same location, 3 feet from Haley's property line and 8 feet from his view windows. Haley's home has second story windows and a deck, both with views and situated 5 feet from the property line shared with MJD. The cedar tree blocks Haley's view from his second story windows. It extends a foot above the eye level of a person standing on the second floor of his home. In a declaration, Pugh referred to the cedar tree, stating, "Based on [Haley's] actions as a neighbor, I would prefer that landscaping block my view of Mr. Haley's property which is in a constant state of disrepair."

On January 28, 2013, Haley amended his answer and counterclaims to include claims that the driveway light on MJD property created "excessive light at night" with "inappropriately directed shielding" and that the excessively large and dense cedar tree MJD planted created a nuisance. He argued in subsequent briefing that the tree was a spite structure prohibited by RCW 7.40.030.

MJD moved for summary judgment on March 29, 2013. On April 26, the trial court found Haley liable for trespass, reserving the issue of damages, and dismissed all but two of his counterclaims. It found an issue of fact existed for

Haley's plant claim and requested additional briefing about the driveway light's compliance with the Mercer Island Code. After further briefing from the parties, on May 13, 2013, the trial court dismissed Haley's light claim.

In a July 3, 2013, motion for summary judgment, MJD requested $20,593.80 for damages and attorney fees. On July 15, 2013, Haley offered MJD's counsel $1,200.00 in settlement. On July 31, Haley served on MJD a proposed order of summary judgment to be entered against MJD for $39.75 for Haley's columbine. MJD opposed entry of the order. On August 2, 2013, the trial court denied MJD's motion, transferred the case to mandatory arbitration because the amount in controversy did not exceed $50,000.00, and reserved MJD's request for attorney fees and costs for decision after the arbitration.

Arbitration took place on December 5, 2013. The arbitrator awarded MJD $8,100 in treble damages for the value, planting, and care of the beech tree and awarded Haley $99 in treble damages for the planting, care, and maintenance of his plant. Once offset, MJD recovered $8,001 in net damages.

The trial court entered a judgment on the arbitration award, awarding MJD $8,001.00 and attorney fees of $362.50 for Haley's failure to appear at his deposition. It also awarded statutory costs of $555.35 to MJD as the prevailing party. It denied Haley's request for fees and costs. The trial court denied both parties' requests for attorney fees related to the arbitration. Haley appeals.

NO. 71691-3-I / 5

STANDARD OF REVIEW

This court reviews summary judgment orders de novo, performing the same inquiry as the trial court.[1] This court considers all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[2] This court affirms a summary judgment order if it determines that no genuine issue exists as to any material fact.[3]

ANALYSIS

Haley presents three issues for this court to decide. First, can a driveway light that complies with a local municipal code be an actionable nuisance? Second, can a single large planted tree be a spite structure prohibited by RCW 7.40.030? Third, when two parties each prevail on a single claim in arbitration, does chapter 4.84 RCW entitle both to awards of fees and costs as the prevailing party?

Nuisance Claim

Haley claims that the driveway light MJD installed constitutes a nuisance because it causes excessive light to shine into Haley's bedroom windows. MJD

---

[1] LaCoursiere v. CamWest Dev., Inc., 181 Wn.2d 734, 740, 339 P.3d 963 (2014).

[2] CR 56(c); Grundy v. Thurston County, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005) (quoting Highline Sch. Dist. No. 401 v. Port of Seattle, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976)).

[3] Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

-5-

responds that a driveway light complying with a local municipal code and used for security purposes cannot constitute a nuisance as a matter of law.[4] MJD asserts that so long as its light complies with the Mercer Island Code, Haley has no right to restrict that light in any way. We disagree.

RCW 7.48.010 defines "nuisance":

The obstruction of any highway or the closing of the channel of any stream used for boating or rafting logs, lumber or timber, or whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and the subject of an action for damages and other and further relief.

A nuisance includes acts that annoy, injure, or endanger the comfort, repose, health, or safety of others and that "renders other persons insecure in life, or in the use of property."[5] An activity constitutes nuisance when it interferes

_____

[4] MJD also argues that in the trial court Haley based his claim on per se statutory nuisance under the Mercer Island Code and now changes his claim to invoke general nuisance law. Generally, appellate courts do not consider issues raised for the first time on appeal unless the issue raises manifest error affecting a constitutional right. State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). But MJD mischaracterizes Haley's nuisance argument. In Haley's response to MJD's motion for summary judgment, Haley argued that the driveway light not only was a per se nuisance in violation of the Mercer Island Code but also violated Washington general nuisance statutes. And at the summary judgment hearing, he argued that even if the light did not violate the city code as nuisance per se, it still constitutes a general nuisance under Washington statutes. The trial court called for additional briefing to determine if the light constituted a per se violation of the city code and later granted MJD's motion for summary judgment on the issue. Thus, we conclude that Haley sufficiently argued general nuisance below so that he may appeal the trial court's order granting MJD summary judgment on the issue.

[5] RCW 7.48.120; Lakey, 176 Wn.2d at 923.

unreasonably with a neighbor's use and enjoyment of his or her property.[6] "In a nuisance case, the fundamental inquiry always appears to be whether the use of certain land can be considered as reasonable in relation to all the facts and surrounding circumstances."[7] To apply the nuisance doctrine, a court balances the rights, interests, and convenience unique to the case.[8]

Haley acknowledges that no Washington case holds light is a nuisance. But he cites Riblet v. Spokane-Portland Cement Company[9] to show that the court must balance MJD's interests and his to resolve this case. He contends that his interest in a dark bedroom outweighs the negligible burden to MJD to adjust the shield on the light.

MJD contends that Riblet provides no guidance because the court requires analogous facts and circumstances for a case to be controlling. It asserts that the driveway light in this case cannot compare with commercial dust and smoke, the alleged nuisance in Riblet.

MJD also contends that because the light does not violate the Mercer Island Code, a court could not find the light to be unreasonable. MJD assumes

---

[6] Moore v. Steve's Outboard Serv., 182 Wn.2d 151, 155, 339 P.3d 169 (2014) (quoting Tiegs v. Watts, 135 Wn.2d 1, 13, 954 P.2d 877 (1998)).

[7] Riblet v. Spokane-Portland Cement Co., 41 Wn.2d 249, 254, 248 P.2d 380 (1952), overruled on other grounds by Bradley v. Am. Smelting & Ref. Co., 104 Wn.2d 677, 709 P.2d 782 (1985).

[8] Riblet, 41 Wn.2d at 254.

[9] 41 Wn.2d 249, 254, 248 P.2d 380 (1952), overruled on other grounds by Bradley v. Am. Smelting & Ref. Co., 104 Wn.2d 677, 709 P.2d 782 (1985).

lawful structures or acts cannot be a nuisance. But where nuisance exists, it is not excused by the otherwise lawful quality of the business or structure causing nuisance.[10]

MJD relies on Collinson v. John L. Scott, Inc.,[11] for the proposition that rules of equity do not permit a court to find a lawfully constructed light a nuisance. In Collinson, homeowners sued for nuisance when defendants built a lawful condominium that obstructed the homeowners' view.[12] This court concluded that a building or structure does not constitute a nuisance merely because it may obstruct a neighbor's view.[13] MJD correctly notes the rule applied in Collison: "'Equity cannot restrict one landowner to confer a benefit on the other.'"[14] But the facts here are different than those in Collison. Causing a bright light to shine in a neighbor's bedroom window because of an unwillingness to adjust the light shield does not compare to building a structure on one's own property. And MJD makes no showing that requiring it to adjust a light shield will deprive it of any use of its property.

MJD cites no authority for its claim that a municipal code can modify the definition of a nuisance adopted by the legislature. Thus, we apply RCW

[10] Tiegs, 135 Wn.2d at 13-14; see Grundy, 155 Wn.2d at 7 n.5.
[11] 55 Wn. App. 481, 483, 778 P.2d 534 (1989).
[12] Collinson, 55 Wn. App. at 483.
[13] Collinson, 55 Wn. App. at 488.
[14] Collinson, 55 Wn. App. at 488 (quoting McInnes v. Kennell, 47 Wn.2d 29, 38, 286 P.2d 713 (1955)).

7.48.010 to determine if Haley can assert his claim. We limit our inquiry to deciding if Haley has demonstrated that a genuine issue of fact exists for this claim.

MJD erected a light in its driveway during the course of litigation with Haley. The light in MJD's driveway has a shield pulled down to prevent light from escaping, but its current position allows bright light to shine directly into Haley's bedroom window at night. Pugh stated in his declaration that the light offers protection and provides security and visibility in his garage and parking area. But Haley stated in his declaration that the shield could easily be adjusted at minimal cost in order to eliminate the light in Haley's window, while still providing light to MJD's garage and parking area. MJD responds that the light complies with the Mercer Island Code but does not claim that it must shine light into Haley's window to provide the desired security and visibility. MJD identifies no harm resulting from an adjustment of the light shield.

Viewing this evidence in the light most favorable to Haley, a trier of fact could find that the driveway light, without the available adjustment of its shield, offends the senses "so as to essentially interfere with the comfortable enjoyment of" Haley's home. The trial court erred by dismissing Haley's nuisance claim on summary judgment.

Spite Structure

Haley next challenges the court's summary dismissal of his claim that RCW 7.40.030 prohibits the cedar tree MJD planted. MJD contends that RCW 7.40.030 does not apply to vegetation or trees planted by a landowner on its property. MJD further contends that a single tree is not a structure prohibited by the statute.

RCW 7.40.030 provides,

An injunction may be granted to restrain the malicious erection, by any owner or lessee of land, of any structure intended to spite, injure or annoy an adjoining proprietor. And where any owner or lessee of land has maliciously erected such a structure with such intent, a mandatory injunction will lie to compel its abatement and removal.

We must decide if this statute prohibits, as a spite structure, any single planted tree. We consider only a tree planted by a landowner and not any naturally occurring tree.

This court reviews de novo the meaning of a statute to determine and carry out the legislature's intent.[15] The court gives effect to the plain meaning of statutory language as an expression of legislative intent.[16] The legislature has

---

[15] Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).
[16] Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 536, 199 P.3d 393 (2009).

directed that its statutes "shall be liberally construed, and shall not be limited by any rule of strict construction."[17]

MJD relies primarily on an early case, Karasek v. Peier,[18] where the court held a fence was a structure, stating, "'In the broadest sense, a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner; any construction.'" We do not find this case helpful because of the context in which the court made this statement. The court quoted a definition of "structure" from Century Dictionary to support its rejection of an argument that the word "structure," as used in the spite structure statute, meant an offensive building.[19] But the term "artificially" in this definition does not require us to focus on natural versus man-made elements used to deliberately create a barrier intended to spite a neighbor. Instead, we look to see if the barrier occurred naturally. Here, it did not.

No reported Washington case has decided if the spite structure statute prohibits an artificially located and planted tree. But Lakes at Mercer Island Homeowners Ass'n v. Witrak[20] involved a similar inquiry. There, a homeowner planted a row of trees along a property line, and this court held that those trees

---

[17] RCW 1.12.010.
[18] 22 Wash. 419, 425, 61 P. 33 (1900) (quoting CENTURY DICTIONARY).
[19] Karasek, 22 Wash. at 424-25.
[20] 61 Wn. App. 177, 178, 810 P.2d 27 (1991).

may constitute a fence prohibited by a restrictive covenant.[21] The court noted that adopting a definition of "fence" excluding trees and restricted to structures would frustrate the purpose of the covenant.[22]

Courts in some other jurisdictions have found that a row of trees may constitute a structure under that state's spite fence statute.[23] In Wilson v. Handley,[24] the California Court of Appeal applied a definition of "structure" as "'something arranged in a definite pattern of organization'" to conclude that California's spite fence statute may prohibit a row of trees if it satisfies the other elements of the statute. The Wilson court noted that it did not consider if a single tree can be a structure.[25] The Supreme Court of Rhode Island upheld a trial court's finding that four trees that touched and spanned 60 feet across fell "well within the statutory definition of a 'structure in the nature of a fence.'"[26] And Maine's Supreme Court also concluded that a row of trees could be a "'structure in the nature of a fence'" prohibited by that state's spite fence statute.[27] Because

---

[21] Lakes at Mercer Island, 61 Wn. App. at 182-83.

[22] Lakes at Mercer Island, 61 Wn. App. at 181.

[23] Wilson v. Handley, 97 Cal. App. 4th 1301, 1306, 119 Cal. Rptr. 2d 263 (2002); Dowdell v. Bloomquist, 847 A.2d 827, 830 (R.I. 2004); Peters v. O'Leary, 2011 ME 106, ¶ 14, 30 A.3d 825, 828-29. Contra Downe v. Rothman, 215 A.D.2d 716, 717, 627 N.Y.S. 424 (1995); Dalton v. Bua, 47 Conn. Supp. 645, 649, 822 A.2d 392 (2003).

[24] 97 Cal. App. 4th 1301, 1306, 119 Cal. Rptr. 2d 263 (2002) (quoting WEBSTER'S COLLEGIATE DICTIONARY 1163 (10th ed. 2000)).

[25] Wilson, 97 Cal. App. 4th at 1306.

[26] Dowdell, 847 A.2d at 830.

[27] Peters, 2011 ME 106, ¶ 14, 30 A.3d at 828-29.

we look to the artificial nature and construction of a structure and not to the materials composing it to see if the statute applies, we also conclude that the statute may cover artificially planted trees.

We next look to see if the spite structure statute can prohibit a single tree. We have not found any case applying a similar statute to a single tree. In the absence of any authority directly on point, we look to elements of a statutory violation.

To establish a violation of RCW 7.40.030, Baillargeon v. Press[28] requires that

> the court must find (1) that the structure damages the adjoining landowner's enjoyment of his property in some significant degree; (2) that the structure is designed as the result of malice or spitefulness primarily or solely to injure and annoy the adjoining landowner; and (3) that the structure serves no really useful or reasonable purpose.

To satisfy constitutional limitations on the exercise of police power, the Karasek court narrowly construed the statute to limit private use of land where these elements exist.[29] The structure "'must strike an ordinary beholder as manifestly erected with a leading purpose to annoy the adjoining owner or occupant in his use of his premises.'"[30]

---

[28] 11 Wn. App. 59, 66, 521 P.2d 746 (1974).

[29] Karasek, 22 Wash. at 428-29.

[30] Karasek, 22 Wash. at 431 (quoting Gallagher v. Dodge, 48 Conn. 387 (1880)).

As this case shows, in some circumstances one large tree can fulfill this purpose as well as a row of trees. A single tree can have a similar breadth, height, and density. Strategically planting a single tree can accomplish the same spiteful purpose as planting a row. Planting a tall tree can as effectively block a view as a tall fence or an art sculpture (perhaps shaped like a tree) placed in the same location.

Thus, we conclude that a single tree artificially located and planted with spiteful intent may, depending on the circumstances, constitute a structure within the meaning of RCW 7.40.030. We emphasize that we address only the affirmative act of artificially locating a tree evaluated at the time of planting. Viewing the evidence in the light most favorable to Haley, genuine issues of material fact remain for the fact finder on all three elements of the Baillargeon test.

Fees and Costs Award

Haley next claims the trial court erred when it did not award him attorney fees and costs for his successful counterclaim. Because costs and fee issues may arise in future proceedings, we evaluate the merits of Haley's claim. This court uses an error of law standard to review a party's entitlement to some award.[31]

---

[31] Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 782, 275 P.3d 339 (2012).

Haley argues that under RCW 4.84.010, which allows costs to a prevailing party, and RCW 4.84.250, which allows attorney fees to a prevailing party, the trial court should have awarded him costs and fees to be offset against any award to MJD. Haley argues that because he filed a permissive and not a compulsory counterclaim under CR 13(b), Marassi v. Lau[32] entitles him to an award of costs and fees offset against any amount awarded to MJD as costs and fees. In Marassi, the plaintiff won on two claims, and the defendant, who did not counterclaim, successfully defended against the remaining ten.[33] Although the plaintiff received an affirmative judgment, the court concluded that the substantially prevailing party rule produced an unfair result.[34] It used a proportionality approach that awards the plaintiff fees for the claims it prevails on and the defendant fees for the claims it prevails on with the awards offset.[35]

Because Haley prevails on one very minor issue, the substantially prevailing party rule did not produce an unfair result. The proportionality rule does not apply.

Despite MJD's success, Haley also contends that MJD cannot be considered the prevailing party. Haley argues that because the $8,100.00 the

---

[32] 71 Wn. App. 912, 917, 859 P.2d 605 (1993), abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009).
[33] Marassi, 71 Wn. App. at 916.
[34] Marassi, 71 Wn. App. at 916.
[35] Marassi, 71 Wn. App. at 917.

arbitrator awarded MJD was closer to the $971.50 and $1,200.00 settlement offers Haley made than to the lowest award MJD said it would accept, $20,593.80, Haley took the more reasonable position. Thus, MJD did not prevail and should not have received an award of costs and fees.

Haley cites no persuasive authority for his position, which is contrary to RCW 4.84.270, which defines a defendant as the prevailing party if the plaintiff recovers nothing or less than the defendant's settlement offer. CR 68 uses the same standard.[36] Here, MJD recovered more than Haley offered to settle the case. Haley also did not comply with the procedural requirements of chapter 4.84 RCW. The trial court properly denied his claims for fees and costs.

## CONCLUSION

Because Haley demonstrated a genuine issue of material fact about the reasonableness of MJD's driveway light installed in compliance with the Mercer Island Code, we reverse the dismissal of his nuisance claim. And because a large planted tree, in some circumstances, may be a spite structure prohibited by RCW 7.40.030, we reverse the dismissal of Haley's statutory claim. But the trial court properly decided that Haley was not a prevailing party entitled to recover

---

[36] Tippie v. Delisle, 55 Wn. App. 417, 421, 777 P.2d 1080 (1989).

NO. 71691-3-I / 17

attorney fees and costs. We remand for further proceedings consistent with this decision.

_____ Leach, J.

WE CONCUR:

_____     _____
Trickey, J                   Dwyer, J.

-17-